Clarke *et al. vs.* Lott *et al.*

John L. Clarke, James Hutchinson, Sarah F. Clarke, Mary T. Sommerville, Henry J. Kuntz, and the unknown heirs of John Vyvian Sommerville, appellants, *vs.* Peter Lott and Joseph Arters, appellees.

## *Appeal from Madison.*

The only divorce authorized by our statute, is *a vinculo matrimonii*. It is granted, as well for causes arising after, as for those existing before the marriage.

The effect of a divorce under our statute, upon the rights of the wife, where it is granted for her fault or misconduct, is the destruction of jointure, loss of dower and all rights secured by marriage settlements.

The legitimacy of the issue is not affected by a divorce, unless the marriage is declared void, on the ground of pre-contract.

A decree of divorce is conclusive evidence of the existence of the cause for which it was granted, in all collateral actions.

A voluntary trust will not be enforced in a Court of Equity.

On the second day of December, A. D. 1847, Peter Lott and Joseph Arters filed their bill in chancery, in the Madison Circuit Court, complaining that, on or about the 17th day of April, A. D. 1841, Fitzroy Sommerville, or, as he sometimes styled himself, John Vyvian Fitzroy Sommerville, and one Mary Turnbull Milburn, contemplated intermarriage; that said Sommerville, in order to induce Mary to marry him, represented himself as a person of wealth, and also as the sole surviving child and heir of one Admiral Sir John Fitzroy Sommerville, and that he would, by virtue of the will of Sir John, upon the death of his mother, be entitled to all the real and personal property of which Sir John died possessed; and that said property consisted of certain sums of money in the three per cent. consolidated bank annuities of the Bank of England, to be found described upon the books of that institution; also, certain sums of money in the capital stock of the Governor and Company of the Merchants of Great Britain, trading, &c., commonly called South Sea Stock; also, a variety of turnpike bonds for £100 each, secured upon the turnpike leading from St. Albans, through Dunstable, in Hertfordshire, England; that said Fitzroy represented himself as the owner in possession of a plantation of seventy-three acres of tea ground in the province of Assam, Bombay, in the East Indies; and also of a tract of two hundred acres near Collinsville, Madison county, Illinois.

The bill further sets forth, that, in consideration of the agreement of the said Mary to marry him, said Fitzroy made and en-

tered into an agreement between himself, herself, and the complainants, whereby said Fitzroy and Mary agreed, in consideration of the premises, to assign and transfer unto the complainants and a person called John Pewtriss, within six moths from the death of the mother of said Fitzroy, all their interest in said bank stock, annuities, turnpike bonds, and South Sea stock; and also, within sixty days from the date of the agreement, (which was dated April 17, 1841,) to convey to the complainants and said Pewtriss the said lands in Assam and Illinois; which property and lands were to be held by the complainants in trust, as follows : That said Fitzroy, or assigns, during his natural life, was to have &c., to his own use &c., all the dividends &c., accruing or arising from said lands or stocks; and in case of the death of said Fitzroy, leaving said Mary, the trustees were to permit and suffer her and her assigns, during her natural life, to take and receive said dividends, profits, rents, &c.; and in case of her subsequent marriage, said dividends, profits, &c., not to be subject to the control of her husband, but to remain for her exclusive use ; and after the death of said Fitzroy and Mary, if leaving children from said marriage, then said trustees to assign &c., and dispose of the property amongst the said children, share and share alike, at such time and in such manner as said Fitzroy should by will direct; in case of the death of said Fitzroy and Mary, without children from said marriage, then said trustees to convey said property to Rebecca Bartlett, the betrothed wife of Charles Milburn of Quincy, during her natural life; and in case of issue from said marriage of said Rebecca and Charles, after the death of said Rebecca, said property to be conveyed by the trustees to said issue ; and in case of no issue from said last named marriage, then said property to be conveyed by said trustees to Charles Milburn, during his natural life, if he survived said Rebecca; and after the death of said Charles, under the circumstances set forth, then said property to be distributed according to the English law of descents, among the heirs and legal successors of said Fitzroy, in England. Said agreement, which was substantially set forth, was made part of the bill, and purported to have been signed by said Fitzroy Sommerville, Mary Turnbull Milburn, Joseph Arters, and Peter Lott.

The bill further sets forth, that complainants executed the agreement in good faith, &c.; and that April 22, 1841, said Fitz-

roy and said Mary intermarried as contemplated ; and the same day said Charles Milburn and Rebecca Bartlett intermarried.

The complainants allege there never was any such person as the said Admiral Sir John Fitzroy Sommerville, or Anna Sommerville, as represented by said Fitzroy, nor had said Fitzroy descending to him any bank stock, turnpike stock, or South Sea stock, as represented by him as aforesaid; and that the whole transaction was designed to impose upon Mary, and to induce her to consent to said marriage; and that all of said statements of said Fitzroy were a fabrication, except as to the one hundred and sixty acres of land near Collinsville, Madison county, Illinois, which property is described as the south-east quarter of section twenty-one, in town three north, range eight, west of the third principal meridian, and was owned by said Fitzroy, and is the identical land mentioned by said Fitzroy as the two hundred acres near Collinsville. The bill further alleges that there was no such person in existence as James Pewtriss, or if there ever was, he died long since, and Fitzroy knew the same.

The bill further alleges, that the marriage of said Fitzroy and Mary was extremely unfortunate ; and that, owing to the discocovery of the imposition upon her, and the intolerably bad temper of said Fitzroy, said Mary, shortly after the marriage, was compelled to leave him, and return to her brother's house, where she has since remained. The complainants allege that the transfers, &c., have never been made, as stipulated in the agreement; that the said Mary is ready and willing to make a transfer of the lands near Collinsville, as agreed, but that said Fitzroy, in his life-time, refused to unite with her in so doing, or to comply with the terms of said agreement, which was one of the reasons of her refusal to live with him ; that said Fitzroy died on or about August 28, 1847, after having made a pretended will, by which he devised all his real estate, embracing the land near Collinsville, to James Hutchinson and John L. Clarke, and their survivor, in trust for one Sarah Fitzroy Clarke, a minor, styled in said will his god-daughter; that said agreement was recorded in Madison county, June 22, 1841, long before the will, which bears date June 15, 1844; that said Hutchinson, John L. Clarke, and Sarah F. Clarke, had full notice of the agreement &c.; that said Sommerville styled himself in the will John Vyvian Fitzroy Sommerville, and is the same who made the agree-

ment, and married said Mary; that said Hutchinson and John L. Clarke are in possession of the land near Collinsville, under said will; that said will was never duly signed and executed as required by law, and if ever made by said Fitzroy, was defectively executed; that there never was any issue from the marriage of said Fitzroy and said Mary; that said Rebecca, who intermarried as aforesaid, deceased about October 16, 1842, leaving a son named Charles Milburn; that said Mary and the said child have a right to the execution of transfers &c., to the complainants, which complainants are entitled to enforce; that one Henry J. Kuntz claims title to the land. The bill then contains a prayer for relief &c., and waives answer under oath. Annexed to the bill is a copy of the will of said Fitzroy, deceased, and the affidavit of Charles Milburn, of search after the heirs of said Fitzroy, which proved futile. A subpœna was issued upon the above bill, and served upon John L. Clarke, Sarah F. Clarke, and James Hutchinson and Henry J. Kuntz; and the unknown heirs of said Fitzroy were brought into Court by publication.

At the March term, 1848, John L. Clarke filed his answer, stating he was ignorant of the execution of the agreement set forth by complainants, though he admitted its being recorded as stated, and insisted upon proof of its genuineness, execution and delivery; that he knew nothing of the representations alleged to have been made by said Fitzroy, or the identity of the person making such representations and said Fitzroy; admits that John Vyvian Fitzroy Sommerville married Mary Turnbull Sommerville early in 1841, and that he has heard her maiden name was Milburn; insists that if the persons named in complainants' bill, and those known by him, were the same, and if the agreement is genuine, the consideration of said agreement was not merely the submission to the marriage ceremony, and the assumption of the marriage vows, by said Mary, but also the agreeing to keep and the actual keeping of said vows, by said Mary; knows nothing of the marriage of Charles Milburn and Rebecca Bartlett, or of the death of William, or that a child was left, or whether there ever were such persons as Admiral Sir John Fitzroy Sommerville, or Anna Maria Sommerville, or James Pewtriss, but asks proof of the death of said Pewtriss; does not know that said John V. F. Sommerville was ever called upon to make a conveyance as averred, and denies the said

allegation; admits the said John V. F. Sommerville owned the one hundred and sixty acres of land described as the south-east quarter of section twenty-one, town three north, range eight, west of third principal meridian.

Said answer further states, that a few weeks after the marriage of said John V. F. and said Mary, said Mary broke her marriage vows, and wilfully deserted her said husband, and absented herself for more than two years, without any reasonable cause; and that October 2, 1843, said John V. F. Sommerville filed his petition for a divorce from said Mary, in the Madison county Circuit Court of the state of Illinois, praying for a divorce, upon the ground said Mary had wilfully deserted and absented herself from said Sommerville, without reasonable cause; in which said bill said Sommerville averred he had always conducted himself towards said Mary as a kind and affectionate husband; that upon the filing of such bill, a subpœna was duly issued, returnable &c., and personal service thereof was duly made upon said Mary; that subsequently, at the May term, 1844, of said Court, said application for divorce came up for trial, but said Mary did not appear; and upon such trial a decree was granted and made, by which the Court ordered, decreed and adjudged, that the bonds of matrimony between said John V. F. Sommerville and said Mary T., should be dissolved, and forever held for naught; avers the identity of the persons divorced with those named in complainants' bill as Mary T. Sommerville and John Vyvian Fitzroy Sommerville.

The answer further insists, that by said divorce said Mary T. forfeited all claim to dower in the estate of her husband, as also all claim to the enforcement of any agreement for jointure, arising from said marriage, as also all claim to the benefit of the agreement set forth by complainants.

The answer further shows, that said John V. F. died August 28, 1847, leaving a will, a copy of which is annexed to complainants' bill, by which said John L. Clarke and James Hutchinson were appointed executors, and by which all the real estate of said John V. F., embracing the one hundred and sixty acres within named as near Collinsville, were devised as stated by complainants; that said will was duly executed according to law, and after the decease of the said John V. F., upon the first day of October, 1847, was duly probated and allowed, and re-

corded by and before the probate justice of the peace of said Madison county, and the same day letters executory were duly granted said respondent, said Hutchinson declining to act, and the respondent duly qualified himself, &c. A copy of the letters executory is annexed to the answer.

The answer further denies said Mary was forced to leave her husband's house, and insists she is estopped by said decree of divorce from denying that said divorce was on account of a breach of her marriage vows, as stated in the petition then filed. Respondent knows of no real estate which was of said John V. F., other than the land near Collinsville.

On the 28th day of August, 1848, Sarah F. Clarke, minor, by her guardian *ad litem*, E. Keating, filed her answer, in substance the same as the answer of John L. Clarke, insisting upon strict proof of the allegations of which she is ignorant; and further insisting, that not only said Mary, but all other persons claiming through the agreement set forth by complainants, forfeited their claims by said divorce; and that the trusts sought to be established were thereby destroyed, and all interest of the complainants divested, and the rights and interest of John V. F. Sommerville restored.

The answer, in addition, says that said agreement was made without any consideration between said John V. F. and Charles Milburn, or any other person than said Mary; and that said consideration had wholly failed, as within stated; also denies that said Mary was compelled, by bad treatment, or from the temper of said John V. F., or from any other cause on his part, to leave her husband, but insists that he conducted himself as a good, kind and affectionate husband, towards said Mary; also denies all fraud on the part of said John V. F. in obtaining said marriage, but insists that said Mary, before said marriage, came to Madison county, and spent several days in examining said John V. F.'s property; and so far from fraud on the part of said John V. F. towards said Mary, it was rather a matrimonial speculation on her part.

On the 31st of August, 1848, the complainants filed their exceptions to the answers of the respondents; objecting—

1. To the sufficiency of the facts set forth in the answers.

2. That the rights of the other persons in the agreement could not be affected by the acts of said Mary.

3. That said John V. F., being guilty of fraud previous to the marriage, the respondents, under the circumstances, could not avail themselves of the divorce.

4. That the consideration of the agreement, *i. e.* marriage, was superior to that in favor of devisee.

5. That complainants, having an equitable estate prior to the devisee, and being trustees for persons other than said Mary, cannot be affected by her acts, or by the acts of the said John V. F.

6. That the answers present no defence.

The exceptions were heard, and *pro forma* overruled; and the complainants then filed their replication.

On the 20th March, 1849, an agreement was made between the parties to the suit, by which the identity of the parties divorced, and the Fitzroy Sommerville and Mary T. Milburn, named in complainants' bill, was admitted; also, that the divorce was granted as stated in the answers; also, that the facts set forth in the bill, which were not denied in the answers, and the facts. set forth in the answers, were true. These admissions were not, however, to conclude the parties, except in the Supreme Court; and their object was stated to be to obtain a decision of the Supreme Court upon the effect of the divorce upon the marriage agreement or covenant set forth in the bill; and all the facts necessary to bring that question before the Court are admitted to be established.

At the August term, 1849, a rule was entered upon the defendants Hutchinson, Mary T. Sommerville, and Henry J. Kuntz, to plead by 12 o'clock; and subsequently, the Court to whom the other defendants and the complainants had submitted their cause at the March term, Underwood, Judge, presiding, rendered a final decree in favor of the complainants, setting aside the will of said John V. F., deceased, as to complainants, and directing said Hutchinson, John L. and Sarah F. Clarke, to join in a conveyance of said one hundred and sixty acres to the complainants; and upon their failure, the said conveyance to be made by the master in chancery; the same to be held and proceeded in by the complainants, in the fulfilment of the trusts set forth in the marriage articles; and that complainants pay costs out of the profits of the land. And, upon the 23d day of August, 1849, the parties made the following further agreement: "It is fur-

ther stipulated that this suit shall go by appeal to (1st district, at Springfield,) the Supreme Court, without any appeal bond being filed."

Errors assigned : That decree should have been for respondents in the Court below. Second, the Court below decided that the divorce set up by appellants was no bar to the aid and relief sought for in complainants' bill.

E. KEATING, for appellants :

1. Marriage is not merely a civil institution, but a contract of the most high and important character; the parties to which possess rights, and are liable to disabilities, corresponding to the observance or breach of the duties belonging thereto. 2. A jointure is a bargain and contract of livelihood, adjoined to the contract of marriage, being a competent provision of freehold, lands, &c., for the wife, to take effect after the death of the husband, if she herself is not the cause of the determination or forfeiture of it. 2 Tomlin's Law Dic., 27, title, "Jointure;" 1 Institutes, 36; 3 Bacon's Ab., 710; Jacob's Law Dic., title, "Jointure;" 1 Cruise, 199. 3. Elopement by a wife, without subsequent reconciliation, bars dower. 3 Comyn's Dig., 490; 2 Bacon's Ab., 384; Clancy on the Rights of Married Women, 201. 4. Adultery is a bar. Hethington *vs.* Graham, 19 Com. Law Rep., 31. 5. A Court of Equity will not assist a wife to recover property settled to her separate use, where she elopes. 3 Comyn's Dig., 502; Hill on Trustees, 411; Carr *vs.* Estabrook, 4 Ves., 148; Bullock *vs.* Menzies, 4 Ves., 798; Moor *vs.* Moor, 1 Atkyns, 277; Watkins *vs.* Watkins, 2 Atkyns, 96. Clancy on Rights of Married Women, 380, 568. 6. Marriages are dissolved by divorce *a vinculo matrimonii,* and such divorce renders the marriage void *ab initio.* Clancy on the Rights of Married Women, 201; 2 Bacon's Ab., 370; Reeve's Dom. Relations, 55; 1 Cruise, 165; Bays *et ux. vs.* Gillespie, 2 J. R., 117. 7. Dower is an incident of marriage, and is barred by a divorce, *a vinculo.* 3 Comyn's Dig., 490, title, "Dower;" 1 Cruise, 165; Clancy on the Rights of Married Women, 197; 2 Bacon's Ab., 370, title, "Dower;" Coke Lit., 33, *b.*; 1 Rob., 681; 1 Hilliard's Ab., 60, 61. 8. Marriage articles and agreements are barred by a divorce, *a vinculo.* 2 Kent, 100, note; Chanand *vs.* Chanand, 1 N. Y. Leg. Observer, 134. 9. The

articles of agreement pass no legal title, but require the aid of a Court of Equity, to enforce them. This will be refused. First, on account of the misconduct of the wife. See former authorities above cited. Second, by the divorce there is a failure of consideration, and the wife stands here as a volunteer, and as such, aid must be refused. Hill on Trustees, 83, 127; 2 Sugden on Vend., 169; 1 Madd. Ch., 414; Ellison *vs.* Ellison, 6 Ves., 662; Webb *vs.* A. M. and F. Ins. Co., 5 Gilman, 223. Third, complainants are mere volunteers. See authorities above cited; 1 Hilliard's Ab., 202. 10. The complainants are not proper parties complaining, and the wife is improperly made defendant. 11. A complainant should not delay seeking aid. Hill on Trustees, 168.

J. GILLESPIE, for appellees:

1. Marriage is a consideration of the highest character in law. 7 Peters, 393; 2 Kent, 172, note *c.*; 4 Dallas, 306. 2. The statute of Illinois of 1833, only bars dower. See R. L. Ill. 1833, page 238. 3. As to whether, under the provisions of said section, any other misconduct will bar dower than adultery. See sec. 12, R. L. Ill. 1833, page 238; 3 Peere Williams' Rep., 276. 4. The divorce in this case was not a divorce *a vinculo*, as defined by the English law. See 1 Black. Com., 440. 5. Adultery, either before or after agreement made in consideration of marriage as a jointure, will not bar the jointure. 1 Ball & Beaty, 204; 13 Vesey, 442; 3 P. Williams, 276; 4 Kent, 55; 4 Bos. & Pul., 121; 1 Cruise's Digest, 219, sec. 3, 4, 5 and 6. 6. Articles entered into before marriage, in consideration of marriage, vesting certain land, &c., upon the wife, will be enforced in equity, even if the wife be guilty of adultery. 1 Atkyns, 272; 4 Vesey, 146, 798. 7. In New York, jointure is forfeited, on account of adultery, by statute. 4 Kent, 55, note *c.*

Opinion by TREAT, C. J.:

The object of this bill is to enforce the specific execution of an agreement made in consideration of a marriage that was subsequently solemnized. It is contended that the decree for a divorce, obtained by the husband on account of the misconduct of the wife, extinguished all right on her part to insist on the performance of the agreement.

By the English law, divorces *a vinculo matrimonii* were only granted for causes existing prior to the marriage—such as pre-contract, consanguinity, affinity, and corporeal infirmity. The sentence of divorce pronounced the marriage void, as having been unlawful *ab initio*. It avoided the marriage from the beginning, and remitted the parties to their original rights.

Divorces *a mensa et thoro* were granted for causes arising after the marriage. The effects of such a divorce were very different. The sentence did not dissolve the marriage, but only provided for the separation of the parties. The marriage relation, and most of the rights and duties growing out of it, still continued. The obligation of the husband to support the wife, and his marital rights to her property, still subsisted. The rights of the wife to dower and a marriage settlement were unimpaired.

The only divorce authorized by our statute is *a vinculo matrimonii*. It is granted as well for causes arising after as for those existing before the marriage. The consequences are, however, much modified by the statute. The legitimacy of the issue is not affected, except where the marriage is declared void on the ground of a prior marriage. The wife does not lose her dower, nor the benefit of a jointure, unless the divorce is granted for her fault or misconduct. The Court granting the divorce may allow her alimony. The decree does not avoid the marriage *ab initio*, except in the case of pre-contract, but only annuls it from the time the decree is pronounced. But, subject to these qualifications, the divorce is absolute. The marriage is dissolved, and all rights and obligations dependent on the existence of the marriage relation, are extinguished. The parties are no longer husband and wife, but are permitted to marry at pleasure. The husband is released from all obligation to maintain the wife, and his right to her separate property is at an and. The rights of the wife to his estate, and to receive a support from it, further than they are saved by the statute, or allowed by the Court in the way of alimony, are determined. It follows that this suit cannot be maintained. The sole object of the agreement, so far as the wife was concerned, was to provide her a support as the widow of Sommerville. Before any estate was vested in the trustees, the marriage was dissolved, for her misconduct, and she ceased to be his wife. He was no longer legally or morally bound to sup-

port her, or to carry into effect any provision previously intended for that purpose. His duty to support her was extinguished by the dissolution of the marriage, and with it fell her right to demand the execution of the trust. It is only in the capacity of wife, or widow, that she can compel the performance of the agreement. This must be the basis of her right to relief. She stands in neither relation. Ceasing to be the wife of Sommerville when living, she could not become his widow by surviving him.

If the estate had been conveyed to the trustees, in pursuance of the agreement, it is possible that her right to receive the income, would not be lost by the divorce; but upon this question we express no opinion. If there had been children of the marriage, it is probable that the agreement might be enforced for their benefit. But it would be done for the sake of the children, and not on account of the mother.

The statements in the bill, respecting the conduct of Sommerville, cannot be considered. It cannot now be insisted that he was not entitled to the divorce. The decree must be held conclusive of the matter in this collateral proceeding.

Nor can the suit be maintained for the benefit of the heir of Charles and Rebecca Milburn, to whom the estate was to go, in default of issue of the marriage. Neither the parents, nor the child, participated in the consideration on which the agreement was founded. It was a voluntary trust as to them. The principle is well settled, that a Court of Equity will not lend its aid to establish a trust at the instance of mere volunteers. If the transaction, on which a voluntary trust is attempted to be established, is still executory or incomplete, the Court will decline all interference in the matter.

The decree of the Circuit Court must be reversed, with costs, and the bill dismissed.

*Decree reversed.*