## Thomas Ross

*v.*

## Susan Ross.

1. HUSBAND—*liability for wife's support while living apart from him.* The husband is not responsible even for necessaries furnished his wife when residing apart from him, if she left him without good cause and without his consent; but if the separation was caused by improper treatment on his part, or he sends her away, or they separate by consent, without any provision for her maintenance, he will be liable for her necessary support, and to that extent he sends credit with her.

2. SAME—*remedy at law and not in equity.* Although it is clearly the duty of a husband to provide a suitable maintenance for his wife, if within his power, yet, according to the course of the English authorities, it is not an obligation or duty enforceable in a court of equity by decreeing a separate maintenance. The remedy at common law is by an action at law against the husband, to be brought by any person supplying the wife with necessaries according to her rank and condition.

3. HUSBAND AND WIFE—*separate maintenance given in equity by statute.* The object of the statute of 1867 was, to remedy this defect in the common law, and to confer upon courts of equity jurisdiction to enforce the common law duty of the husband to furnish support and maintenance for his wife suitable to the condition of the parties in life, upon her application, in all cases where she is living separate and apart from him without her fault, or in other words, under such circumstances as would enable her to avail herself of the common law remedy of obtaining such support upon the credit of her husband.

4. Therefore, if the wife is living separate and apart from her husband on account of improper treatment by him, or he sends her away, or if he assents to or acquiesces in her leaving him, he will be liable under the statute to a decree in equity for her separate maintenance and support, on bill filed by her.

APPEAL from the Circuit Court of Kane county; the Hon. SILVANUS WILCOX, Judge, presiding.

This was a bill in equity, exhibited by Susan Ross against Thomas Ross, her husband, for a separate maintenance, under the act of March 5, 1867. The essential facts of the case are presented in the opinion of the court. On a hearing of the cause

the court below decreed that the complainant was entitled to a separate maintenance from the defendant; that the defendant, within thirty days, pay the complainant $130 for maintenance from Sept. 1, 1872, to March 1, 1873, and that he pay within the like time $100 for the complainant's solicitor's fee; that from March 1, 1873, until the further order of the court, he pay $5 per week to the complainant, and that such sums of money be liens upon all the real estate of the defendant in the county, and that complainant have execution therefor.

Mr. JOHN W. RANSTEAD, for the appellant.

Messrs. BOTSFORD, BARRY & LOVELL, for the appellee.

Mr. JUSTICE MCALLISTER delivered the opinion of the Court:

The husband, by the common law, is bound to provide his wife with necessaries suitable to her situation and his condition in life. As proceeding from this general duty, the common law courts have held that if the husband abandons his wife, or they separate by consent, without any provision for her maintenance, or if he sends her away, he is liable for her necessaries, and he sends credit with her to that extent. 2 Kent's Com. 146–7; *Evans* v. *Fisher*, 5 Gilm. 569. In that case this court fully recognized the rules of the common law, in this language: "The husband is not responsible even for necessaries furnished the wife, when residing apart from him, if she left him without good cause and against his consent. But if the separation was caused by improper treatment on his part, or he assented to or acquiesced in it, he is liable for her necessary support, and to that extent she has credit on his account in the community."

These rules were based upon just and humane principles, but from the circumstances of their practical application the relief they were intended to afford was frequently beset with

difficulties, and sometimes denied altogether, because the persons who trusted her on her husband's account must do so at their peril, they being subject to the burden of showing a case where the law gave her the credit of her husband for necessaries suitable to her situation and his condition in life.

Notwithstanding the common law imposed the duty upon the husband to provide the wife with necessaries suitable to their condition in life, and the obstacles which, from special circumstances, sometimes lay in the way of its enforcement, still, courts of equity, though recognizing the common law duty, almost universally refused to take jurisdiction and enforce specific performance of it, but left the wife to her common law remedy. Story says : "Although it is clearly the duty of the husband to provide a suitable maintenance for his wife if it is within his power, yet, according to the course of the English authorities, it seems not to be an obligation or duty of which courts of equity will decree specific performance, by directing, in such a case, a separate maintenance. The proper remedy is by an action in a court of common law, to be brought against the husband, by any person who shall, under such circumstances, supply the wife with necessaries according to her rank and condition." 2 Story's Eq. Jur. sec. 1422.

Now, it was the inadequacy of the common law remedy, and the refusal of courts of equity to take jurisdiction for the enforcement of the husband's duty to furnish support and maintenance for his wife, that induced the legislature to pass the act of 1867, providing that married women who, without their fault, are living separate and apart from their husbands, may have their remedy in equity, in their own respective names, against their respective husbands, for a reasonable support and maintenance, to be allowed with reference to the condition of the parties in life and the circumstances of the respective cases.

In construing this act, the court must have regard to the common law duty or obligation of the husband to support

and maintain his wife, the remedy afforded by that law, its defects and inadequacy under many circumstances, and the remedy proposed by the statute, and it is the duty of the court to so construe the act as to suppress the mischief and advance the remedy. The object of the statute is apparent on its face. It is to confer jurisdiction upon the court of equity to enforce the common law duty of the husband to furnish support and maintenance for the wife suitable to the condition of the parties in life, upon her application, in all cases where she is living separate and apart from him without her fault, or, in other words, under such circumstances as would enable her to avail herself of the common law remedy of obtaining such support upon the credit of her husband.

The bill in this case was filed under that statute by appellee, while living separate and apart from her husband, and the only question presented is, whether she was so living separate and apart from him under such circumstances as would clothe her with the right at common law to obtain support and maintenance upon his credit. To be so, it must be without her fault. If she left his house to live apart from him, either in consequence of improper treatment, or he assented to or acquiesced in her leaving, he is liable for her necessary support, and to that extent she had credit on his account in the community, as was laid down by this court in *Evans*₀v. *Fisher*, above cited.

The testimony shows that these parties were married in the State of New York, in 1841, and in 1844 they came west and settled on a farm in Kane county, in this State. Appellant had only between $500 and $600 when they came. Appellee had a moderate out-fit, and from her father some $400, which appellant had, out of which was forty acres of the land now composing his farm of 210 acres, which her father purchased, paid for and deeded to appellant as a gratuity. They raised three children, two sons and a daughter; and appellant says of her, "she was a first class housekeeper; it was hard to find her equal; she did more than she ought, in

her early days; she has been in poor health for twenty years." And again he says: "She was a frugal and careful wife, and was particular not to get in debt." But after her health became broken down, and some fourteen or fifteen years before the hearing of this cause, he began a systematic course of ill treatment, which has continued at short intervals, and becoming gradually aggravated, down to the time when she left him, in June, 1872. He began and continued with increased bitterness, with false and unjust accusations of want of chastity. These were made in the presence of, and to their own children, to hired men, in the presence of hired girls and women, and to particular friends. After he had thus done what he could to blast her reputation and crush her spirits, he suspended her control in the household and substituted another woman in her place, against appellee's wishes and protest. On one occasion, while that woman was in control, appellant ordered appellee, with violent and insulting language, into her own room, for attempting to interfere in the household affairs, and she testifies that at the same time he had the shovel in his hand, and flourished it in a threatening manner towards her. He admits having the shovel in his hand and ordering her to her room, but says he had previously laid the shovel down. On another occasion, this new housekeeper violently threw the fire-shovel at appellee, but missed her, and on complaining of it to her husband, he again ordered her to her room.

Appellant's conduct towards appellee had a direct tendency to drive her from the house, and it is a fair inference, from all the evidence, that he so intended it; for, but a short time before she left, he declared to her that she was a lewd woman —did not care for him; and, therefore, he did not care how soon she left the house, and ran with other men. And again: one of appellant's own witnesses testified that, shortly before she left, she told him she would leave the next day unless he fixed things differently; that she had always taken care of his shirts and collars, until he would not let her any longer.

Then he replied, "that she could do that for somebody she liked better." What was this but a suggestion to leave? She left the 4th of June, 1872. On the 10th of September next following, he wrote and sent to her the following letter, which embodies the same spirit which he had manifested towards her for the previous fourteen years, as shown by the evidence:

"ELGIN, *September* 10, 1872.

"SUSAN ROSS: Plain facts are what we need; therefore, remember what your name was registered at Beloit four years ago this fall. It was not Mrs. Ross; it was Mr. Long and lady. Who did you see there that you knew? I was told to go to Beloit, to a certain hotel by the name of the Salisbury House, and see if your wife's name is on the register at that house. There is where she staid over night. All names that stay there over night are registered. I went there last winter. I found these facts. Honesty is the best policy. I am getting along well. I have a good cook, and have plenty to eat. I do not have to set a plate, teacup and saucer on your and Joe's table, and be sneered at and hounded like some old dog, as I was last spring. You will hear the sound of Beloit some other time. I wish you a good time and plenty of fun. I have no doubt you had plenty of fun at Darien this summer. Go it while your young; when you get old you can't.

"Yours,

"THOS. ROSS."

He had repeatedly made this charge against her before she left, and, according to the evidence, a more base and cruel calumny of a woman's honor was never uttered. This letter, besides showing by what means he had persecuted appellee out of her home, shows appellant's acquiescence in her living apart from him, and brings the case fairly within the common law rule of making him liable for her necessary support. It is therefore within the statute, and, as there is no complaint relative to the amount appellant was required to pay, we are of opinion that the decree of the circuit court should be affirmed.          *Decree affirmed.*