(No. 32926.—

FERN A. POPE, Appellant, *vs.* HARRY O. POPE, Appellee.

*Opinion filed January 20, 1954.*

LEFORGEE, SAMUELS & MILLER, of Decatur, (CARL R. MILLER, and JERALD E. JACKSON, of counsel,) for appellant.

MILLER, LEACH & ARMSTRONG, of Decatur, (CHARLES Y. MILLER, and WAYNE E. ARMSTRONG, of counsel,) for appellee.

Mr. CHIEF JUSTICE SCHAEFER delivered the opinion of the court:

On January 22, 1946, the plaintiff, Fern Pope, filed a complaint for separate maintenance in the circuit court of Macon County, alleging that in August of 1945, her husband had forced her to leave their residence, and that since that time she had been living separate from him without

fault on her part. Her husband denied this allegation, and filed a counterclaim for divorce in which he alleged that she had wilfully deserted him in August of 1945. On June 4, 1947, the court entered a decree finding that the plaintiff had been living separate and apart from her husband since August 21, 1945, without her fault, ordering the defendant to pay his wife $225 a month for her support, and dismissing his counterclaim for want of equity.

Shortly thereafter, on August 27, 1947, the defendant filed a complaint for divorce in a Nevada district court, alleging that for the year preceding the complaint his wife had deserted him. She was notified of the action in Illinois, but did not appear. The defendant testified that the date upon which his wife had deserted him was August 21, 1945. Neither the complaint nor the report of proceedings shows that the defendant advised the Nevada court of the prior litigation in Illinois, and it is not suggested that he did so. On October 29, 1947, the Nevada court granted the divorce. It awarded no alimony, and made no reference to the Illinois decree.

On February 18, 1953, the plaintiff filed a petition in the circuit court of Macon County to recover past due support payments totaling $15,232, together with the sum of $2114.62, representing interest at five per cent on each payment from the time it became due. In his answer the defendant challenged both the right to interest and the right to any payments which accrued after the date of his divorce. The circuit court entered a decree based upon defendant's contentions, and the plaintiff has appealed directly to this court.

There is no question here of the jurisdiction of the Nevada court to grant the divorce so far as the defendant's domicile in Nevada is concerned, since the plaintiff, although denying such domicile in her reply below, assigned no error on this point, and offered no evidence to overcome the presumption of domicile which we are required

to give the foreign decree. See *Williams* v. *North Carolina*, 325 U.S. 226.

In seeking reversal, the plaintiff advances two general contentions. The first is that the Nevada decree is entitled to be given no effect at all, even as to marital status, because the Nevada court itself failed to give full faith and credit to a prior determination in Illinois that she had not deserted her husband, and because his failure to inform the Nevada court of the Illinois proceedings, and in particular of the dismissal of his counterclaim, amounted to fraud. The second is that under the holding in *Estin* v. *Estin*, 334 U.S. 541, even if the *ex parte* Nevada decree must be regarded as a valid determination of marital status, it cannot be treated as destroying the wife's right to support payments without a violation of due process.

Plaintiff's contentions, rejected by the trial court, raise substantial questions involving a construction of the State and Federal constitutions which have not hitherto been settled by the decisions of this court and which give us jurisdiction of this direct appeal. Ill. Rev. Stat. 1953, chap. 110, par. 199; Jones Ann. Stat. 104.075; *Van Dyke* v. *Illinois Commercial Men's Ass'n*, 358 Ill. 458.

We do not, however, find it necessary to consider the effect of the prior Illinois adjudication or of the defendant's failure to disclose it to the Nevada court, (see *Dunham* v. *Dunham*, 162 Ill. 589; *Atkins* v. *Atkins*, 386 Ill. 345,) for we hold that the Nevada decree, although regarded as a valid determination of the parties' capacity to remarry, does not have the effect of terminating the plaintiff's right to support. The plaintiff's contention that the due process clause precludes our giving the Nevada decree that effect raises a difficult and serious constitutional issue. Her argument is that the lack of personal jurisdiction in Nevada to adjudicate what the United States Supreme Court characterized as property rights would render the Nevada decree void in that State for want of due process,

and that for Illinois to enforce such a decree, or indeed to terminate her rights through the medium of any *ex parte* proceedings, would therefore be equally unconstitutional. We need not consider whether such far-reaching implications are to be drawn from the *Estin case*, (see *Sutton* v. *Leib*, 342 U.S. 402,) since we do not construe the Separate Maintenance Act as requiring that result.

The statute with which we are concerned provides that "Married men or women who, without their fault, now live or hereafter may live separate and apart from their wives or husbands may have their remedy in equity * * * against their said wives or husbands * * * for a reasonable support and maintenance while they so live or have so lived separate and apart." Ill. Rev. Stat. 1953, chap. 68, par. 22; Jones Ann. Stat. 109.189.

This legislation recognizes the ancient common-law obligation of the husband to support his wife even when she was living away from him. It reflects dissatisfaction with the inadequate remedies afforded by the common law for the enforcement of this obligation. (*Ross* v. *Ross*, 69 Ill. 569.) The manifest inadequacy of the common-law remedy led courts of equity in some States to grant decrees for separate maintenance even in the absence of express statutory authorization. (See *Lang* v. *Lang*, 70 W. Va. 205, 73 S.E. 716; *Edgerton* v. *Edgerton*, 12 Mont. 122, 29 Pac. 966.) In other States, including our own, the closing of the gap between right and remedy had to wait upon legislative action. *Trotter* v. *Trotter*, 77 Ill. 510; *Ross* v. *Ross*, 69 Ill. 569.

The special concern of the State in securing support for the wife has also been manifested in other statutes and rules of decision intended to enforce the husband's obligation. *Quasi*-criminal proceedings are provided to compel support, (Ill. Rev. Stat. 1953, chap. 68, pars. 24-33,) and the legislature has undertaken to prevent the husband's evasion of his duties by the device of removing to another

State. (Ill. Rev. Stat. 1953, chap. 68, pars. 50 *et seq.;* Jones Ann. Stat. 98.55 *et seq.*) Our divorce statute has been amended to make possible the securing of alimony in a separate action following divorce proceedings in which personal jurisdiction over the husband could not initially be obtained. (Ill. Rev. Stat. 1953, chap. 40, par. 19; Jones Ann. Stat. 109.186; Laws of 1947, p. 818, sec. 1; cf. *Kelley* v. *Kelley,* 317 Ill. 104.) And we have refused to enforce contracts between husband and wife by which the former is released from his duty of support. *Lagow* v. *Snapp,* 400 Ill. 414; *Berge* v. *Berge,* 366 Ill. 228; *Vock* v. *Vock,* 365 Ill. 432; *VanKoten* v. *VanKoten,* 323 Ill. 323; *Lyons* v. *Schanbacher,* 316 Ill. 569.

Defendant cites no decision of this court which holds that a separate maintenance decree is automatically terminated by a decree of divorce entered by a court which lacks personal jurisdiction over both spouses. *Knowlton* v. *Knowlton,* 155 Ill. 158, (cf. *Atkins* v. *Atkins,* 386 Ill. 345, 358,) goes no further than to deny the former wife's right to commence an action for separate maintenance following a foreign divorce obtained by the husband. It appears, moreover, that the decision was not based on Illinois law but on a supposed requirement of the full faith and credit clause which may no longer exist. See *Thompson* v. *Thompson,* 226 U.S. 551; *Estin* v. *Estin,* 334 U.S. 541, 546, note 4.

We may, of course, put to one side those cases in which the divorce was obtained at the instance of the wife (*Harper* v. *Rooker,* 52 Ill. 370; *Earles* v. *Earles,* 343 Ill. App. 447; but cf. *Darnell* v. *Darnell,* 212 Ill. App. 601;) and those where, as defendant, she appeared or was personally served. (*Buck* v. *Buck,* 337 Ill. App. 520; *Shaw* v. *Shaw,* 332 Ill. App. 442.) Where there is an opportunity for the wife to contest the merits and to claim by way of alimony the equivalent of what she has been receiving in support money, there may be reason to limit her

rights against the husband to what the divorce court has granted.

Certainly the statute, considered as an isolated text, does not compel the result for which defendant contends. While the word "they" in the final clause might perhaps be taken to incorporate a requirement of continuing matrimonial status, we would hesitate, on the basis of language no more explicit than this, to read into the act a requirement so hostile to its general purpose. Such a construction would favor the husband who is comparatively well-off and penalize the wife who is most in need of support, thus robbing the statute of its value in those cases where it would be of greatest use. Nor is the question resolved simply by characterizing the right to support as an "incident of marital status." Marriage is an aggregate of rights and duties. A decree of divorce enables the parties to contract a new marriage; that it does not necessarily relieve them of all the obligations of the old is witnessed by the award of alimony upon, or even after divorce. Ill. Rev. Stat. 1953, chap. 40, par. 19; cf. *Darnell* v. *Darnell*, 212 Ill. App. 601; *Estin* v. *Estin*, 334 U.S. 541; *May* v. *Anderson*, 345 U.S. 528.

Moreover, defendant's position is inconsistent with that which we have taken in the analogous case of homestead rights. Our statutes provide that one who is divorced for his own fault is barred of dower and of all "other estate" in the spouse's property. (Ill. Rev. Stat. 1953, chap. 3, par. 173; formerly chap. 41, par. 14.) It is also provided that the homestead exemption shall continue after the death of a householder for the benefit of the husband or wife surviving, and that in case the husband or wife shall desert his or her family, the exemption shall continue in favor of the one occupying the premises. (Ill. Rev. Stat. 1953, chap. 52, par. 2.) Accordingly, we have held that in a divorce obtained by the husband for the wife's misconduct, no lack of personal jurisdiction being shown, her right to

dower and to homestead is barred. (*Endicott* v. *Rudolph*, 338 Ill. 307; *Rendleman* v. *Rendleman*, 118 Ill. 257; cf. *Chamblin* v. *Chamblin*, 362 Ill. 588; *Jordan* v. *Clark*, 81 Ill. 465; *Clarke* v. *Lott*, 11 Ill. 105.) But where the husband obtains a foreign divorce *ex parte* we have held that the wife's homestead rights are unimpaired. (*Lynn* v. *Sentel*, 183 Ill. 382.) In the *Lynn case* a husband abandoned his wife and removed to Missouri, where he obtained a divorce upon constructive service, and remarried. Subsequently the homestead land was sold to satisfy a judgment against the husband, and his first wife sued to set aside the sale, claiming her right of homestead. We held that her rights were unimpaired, and in our opinion stated, "The decree of divorce * * * serves to dissolve the marriage relation, but it cannot affect property rights beyond the jurisdiction of the court." 183 Ill. 382, 387.

We think the principle expressed in the *Lynn case* is applicable here. Occasional suggestions in our opinions that divorce terminates the right to support or kindred property rights (see *Kelley* v. *Kelley*, 317 Ill. 104, 108; *Bushnell* v. *Cooper*, 289 Ill. 260, 264; *Spitler* v. *Spitler*, 108 Ill. 120, 125, 126; *Jordan* v. *Clark*, 81 Ill. 465; *Clarke* v. *Lott*, 11 Ill. 105, 114,) must be considered as referring only to those situations where the wife has participated in the proceedings, or where a contract between the parties was construed to require this result. See *Seuss* v. *Schukat*, 358 Ill. 27; cf. *Jordan* v. *Clark*, 81 Ill. 465; *Clarke* v. *Lott*, 11 Ill. 105.

We recognize that it would not be permissible for Illinois to attempt to enforce her conception of what grounds should suffice for divorce by imposing a sanction against divorces obtained in other States. The construction of the statute which we adopt, however, does not discriminate between local and foreign divorces, or between divorces granted on grounds available in Illinois and divorces granted on other grounds. Nor do we limit our decision

to cases in which the foreign divorce is obtained on the basis of allegations previously rejected by an Illinois court, or in which there has been a failure to disclose that fact to the foreign court. Under our decision a defendant securing an *ex parte* foreign divorce is not exposed to any greater liability than would otherwise attach. Should he seek to end his obligations by direct proceedings before the court which entered the separate maintenance decree, he would have to meet the adverse contentions of his wife. And should his wife appear or be personally served in divorce proceedings brought here or elsewhere, his obligation to support would remain if she were to prevail. Indeed, under some circumstances he might be required to pay alimony even if a divorce were decreed in his favor. *Boylan* v. *Boylan,* 349 Ill. 471; *Deenis* v. *Deenis,* 79 Ill. 74; *Reavis* v. *Reavis,* 1 Scam. 242; cf. *Spitler* v. *Spitler,* 108 Ill. 120, 125.

Plaintiff also assigns error on the refusal of the trial court to allow interest on the accrued payments due under the decree of June 4, 1947. It is provided by statute (Ill. Rev. Stat. 1953, chap. 74, par. 3,) that "Judgments recovered * * * shall draw interest at the rate of five (5) per centum per annum from the date of the same until satisfied." The original decree did not order immediate payment of a lump sum, and therefore no interest could be computed from the time when the decree itself was rendered. Plaintiff contends, however, that interest should run on each monthly payment from the time when it became due. The defendant maintains that until there is a judgment finding the total amount presently due and unpaid, no interest can run.

We think the plaintiff is correct. In *Becker* v. *Becker,* 79 Ill. 532, and *Dinet* v. *Eigenmann,* 80 Ill. 274, the decrees called for the defendant to make future payments, and expressly required him to pay interest thereon if the payments were not made when due. Although we reversed the

decrees on the grounds that the rate of interest fixed in them exceeded the statutory rate, our decisions impliedly held that interest at the legal rate could be recovered on the payments from the date they fell due, and that same view is expressed in *Harding* v. *Harding,* 180 Ill. 592, 593. It is of course not significant that the decree here did not expressly call for interest. (*Dooley* v. *Stipp,* 26 Ill. 86.) If a judgment for immediate payment of a lump sum would bear interest, as is conceded, from the date of rendition, it is no hardship that a defendant required only to make periodic payments of lesser amount should pay interest when these are overdue, and neither the policy of the separate maintenance statute nor sound judicial administration favors a rule which would encourage plaintiffs to make repeated applications to the courts for the purpose merely of securing arithmetical computations.

The decree of the circuit court is therefore reversed and the cause remanded with directions to enter a decree for the plaintiff in conformity with the views expressed in this opinion.

*Reversed and remanded, with directions.*