Elsie M. PHELAN

v.

Joseph B. PHELAN.

No. 79–467–Appeal.

Supreme Court of Rhode Island.

April 13, 1982.

───────────

Moore, Virgadamo & Lynch, Ltd., Laurent L. Rousseau, Newport, for petitioner.

Kenneth R. Tremblay, Portsmouth, for respondent.

## OPINION

SHEA, Justice.

This is an appeal from an order entered by a justice of the Family Court terminating a previously entered order. The earlier order had granted the petitioner, Elsie M. Phelan, separate maintenance in the amount of $400 per month to be paid by her husband, Joseph B. Phelan. The award was made pursuant to the provisions of G.L.1956 (1969 Reenactment) § 15–5–19 whereby either party to a marriage can be ordered to pay a separate maintenance to the other "whenever a cause is in existence which is, or if continued will be a cause for divorce * * *."[1] Separate maintenance can be awarded pursuant to this section without the filing of a divorce petition. The Family Court justice terminated the separate-maintenance award upon a showing that the husband obtained an ex parte divorce in California. He ruled that as a result of our holding in *Castellucci v. Castellucci*, 116 R.I. 101, 352 A.2d 640 (1976), once there is a valid foreign divorce, any support order issued under § 15–5–19 is terminated because there is no continuing jurisdiction in the court to enter any further support orders. We reverse.

Elsie and Joseph Phelan were married on September 2, 1975. On April 27, 1976, Elsie filed the § 15–5–19 petition for relief without commencement of divorce proceedings alleging that both she and her husband were residents of Rhode Island, that her husband had been guilty of extreme cruelty, and that she was without means. She requested a separate maintenance out of her husband's estate and funds for prosecution of her petition. The monthly $400 award was made in an order entered on July 7, 1976, effective as of June 24, 1976.

On April 6, 1978, petitioner filed a motion to garnish her husband's wages, alleging that he was in arrears of the support payments in the amount of $1,200. In an order entered on May 4, 1978, a justice of the Family Court found Joseph Phelan to be in contempt of the previous order of the court. He was allowed to purge himself of contempt by paying the arrearage in accordance with the prior support order.

In the meantime Joseph moved to California. After satisfying that state's residency requirement, he filed a petition for divorce giving petitioner notice by registered mail. The divorce action proceeded without Elsie subjecting herself to the personal jurisdiction of the California court. The ex parte divorce decree was granted by the Superior Court of California, County of San Diego on February 5, 1979.

On February 28, 1979 petitioner filed a second motion to adjudge her now-former husband in contempt and to garnish his wages. Joseph was again found to be in contempt and was ordered to pay the arrearage. Regarding the ex parte California divorce decree, the justice found that since Joseph had not filed a motion to terminate the separate-maintenance award in Rhode Island, it continued in full force and effect. This order was entered on April 16, 1979, effective as of April 5, 1979.

Subsequently, petitioner filed a third motion to garnish respondent's wages. It was in consideration of this motion that the Family Court justice terminated the separate-maintenance award concluding as follows:

"[T]here is a foreign divorce and it was valid as of February 5, 1979. Now, as I read *Castellucci*, once there is a foreign divorce and it's valid, then, as far as any

───────────

[1]. General Laws 1956 (1969 Reenactment) § 15–5–19 has been amended several times, most recently by P.L. 1981, ch. 320, § 2. As currently written, § 15–5–19 is entirely sex neutral and the term "separate maintenance" has been changed to "alimony."

support order is concerned, here, is terminated. Although [Joseph Phelan's counsel] didn't present me with an order that said it would terminate, certainly once there is a finding, as of record, that the foreign divorce decree is good, then I say that jurisdiction beyond that date stops * * *.

"* * *

"[A]s far as the arrears are concerned, up to the date you came before me * * * this motion to garnish is granted."

The sole issue on appeal is whether a separate-maintenance order, which involved then Rhode Island domiciliaries who were subject to the personal jurisdiction of the Family Court and which was issued in an action for relief without commencement of divorce proceedings, terminates after the Family Court is apprised of an ex parte divorce obtained in a sister state. We hold that it does not.

We recognize that this issue is one of the many issues in the law in which courts in different jurisdictions have reached different conclusions. Many courts have ruled that the right to separate maintenance under a prior local support order is terminated once a valid ex parte divorce decree is obtained. They reason that the existence of the marriage status is a condition precedent to an award of separate maintenance. *Starkey v. Starkey*, 209 So.2d 593 (La.App. 1967); *Brewster v. Brewster*, 204 Md. 501, 105 A.2d 232 (1954); *Madden v. Madden*, 359 Mass. 356, 269 N.E.2d 89, *cert. denied*, 404 U.S. 854, 92 S.Ct. 95, 30 L.Ed.2d 94 (1971); *Rodda v. Rodda*, 185 Or. 140, 200 P.2d 616 (1948); *Lorusso v. Lorusso*, 189 Pa.Super.Ct. 403, 150 A.2d 370 (1959); *Brady v. Brady*, 151 W.Va. 900, 158 S.E.2d 359 (1967).

On the other hand, approximately an equal number of jurisdictions have ruled that the separate-maintenance award is not terminated. These courts have generally reasoned that local public policy would not

be served by permitting a spouse to escape his or her local obligations by going to a sister state and obtaining a foreign ex parte divorce. *Hudson v. Hudson*, 52 Cal.2d 735, 344 P.2d 295 (1959); *Sorrells v. Sorrells*, 82 So.2d 684 (Fla.1955); *Pope v. Pope*, 2 Ill.2d 152, 117 N.E.2d 65 (1954); *Miller v. Miller*, 200 Iowa 1193, 206 N.W. 262 (1925); *Kram v. Kram*, 52 N.J. 545, 247 A.2d 316 (1968); *Estin v. Estin*, 296 N.Y. 308, 73 N.E.2d 113 (1947), *aff'd.*, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948).

Our resolution of this issue in Rhode Island was foreshadowed by this court's decision in *Rymanowski v. Rymanowski*, 105 R.I. 89, 249 A.2d 407 (1969). There a Massachusetts court had ordered the husband to pay monthly support while at the same time denying his prayer for divorce. Subsequently, the husband moved to Nevada, satisfied the residency requirement and obtained an ex parte divorce. Later, a Massachusetts court accorded full faith and credit to the Nevada decree, finding that the Nevada court had properly acquired personal jurisdiction over the husband. The wife had made the jurisdictional challenge in accordance with the mandate of the United States Supreme Court in the second *Williams* case. *Williams v. North Carolina*, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945). No such jurisdictional challenge was made by petitioner in the case before us.

The proceedings in the *Rymanowski* case ended up in our Family Court after the husband settled in Rhode Island and the wife filed a petition pursuant to the provisions of the Reciprocal Enforcement of Support Act. The wife appealed the denial of her petition to this court. In accordance with the decision of the Supreme Court in *Estin v. Estin*, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948),[2] this court held that the right to support continues undiminished when one spouse leaves the state and obtains a divorce in another state where the

---

2. In *Estin v. Estin*, 334 U.S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948), the Supreme Court held that a Nevada court that did not have personal jurisdiction over the wife had no power to

terminate the husband's obligation to provide for her support as required by a preexisting New York separation decree.

foreign court never had personal jurisdiction over the spouse against whom divorce proceedings were filed. *Rymanowski v. Rymanowski*, 105 R.I. at 100, 249 A.2d at 413.

This concept of a "divisible divorce" whereby a divorce decree can terminate the marital status but not be dispositive on the issue of alimony or previously awarded support is founded upon well-established due-process considerations first announced in *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1877). The *Rymanowski* court noted that the *Estin* rule does no more than carry over traditional notions of due process to the field of domestic relations since "[i]t speaks in terms of 'property rights' possessed by the wife and declares that these cannot be affected by a divorce-decreeing state that lacks personal jurisdiction over her." *Rymanowski v. Rymanowski*, 105 R.I. at 99, 249 A.2d at 412. Further, the court noted that it would rely upon its inherent powers in equity to look to the substance rather than to the form of the right asserted.

> "We feel that it makes little difference whether petitioner's claim is designated as one for 'support' or 'alimony.' What is important is that respondent here has so far avoided his responsibilities arising out of his marriage by simply absenting himself from Massachusetts." *Id.* at 100–01, 249 A.2d at 413.

We likewise find that it is not significant that the monthly payment to petitioner is characterized as "alimony," "support," or even "separate maintenance." These terms are substantially interchangeable when used to describe a periodic payment to a spouse which is based on financial necessity.

In this case the Family Court justice found that the separate-maintenance award terminated because the California divorce decree divested our court of jurisdiction to continue the order in effect. To allow an ex parte divorce decree to terminate a valid order entered in this state and based on personal jurisdiction over both parties would mean that the right to support would be affected by an ex parte decree. This is not permissible under *Rymanowski*. Were we to permit such a result, spouses obligated to pay support pursuant to a valid court order in Rhode Island could avoid their responsibilities merely by absenting themselves from this state long enough to obtain ex parte divorces elsewhere.

The award of separate maintenance in Rhode Island to petitioner is in the nature of a property right. It was created in a proceeding in which both parties were present and subject to the jurisdiction of the Rhode Island courts. On the question of jurisdiction to adjudicate this type of property right, the Supreme Court in *Estin* stated:

> "The property interest which it created was an intangible, jurisdiction over which cannot be exerted through control over a physical thing. Jurisdiction over an intangible can indeed only arise from control or power over the persons whose relationships are the source of the rights and obligations." *Estin v. Estin*, 334 U.S. at 548, 68 S.Ct. at 1218, 92 L.Ed. at 1568.

We hold that it is necessary to continue the separate-maintenance order in full force and effect in order to accord the spouse receiving the support his or her due-process rights. The order entered in Rhode Island awarding petitioner $400 per month remains in effect until such time as our Family Court, or another state court having personal jurisdiction over both parties, adjudicates the question of alimony upon divorce on a proper petition. Thus, the spouse domiciled in Rhode Island is assured of continuing support until that occurs. If the spouse who has left the state and has obtained the ex parte divorce attempts to avoid his or her responsibilities by not making the required payments, the other spouse can seek enforcement through the remedies available in our Family Court or through the Reciprocal Enforcement of Support Act to enforce the separate-maintenance order.

It is entirely possible that some adjustment in the monthly support is in order now that the Phelans are divorced. However, such an adjustment is not forthcoming merely because of the ex parte divorce.

There must be, after proper notice, a hearing to consider the question of changes in circumstances by a court that has personal jurisdiction over both parties. This procedure is in accordance with G.L.1956 (1981 Reenactment) § 15–5–16, as amended by P.L. 1981, ch. 320, § 1, which recites that once the Family Court has granted relief without the commencement of divorce proceedings, "the court may from time to time upon the petition of either party, review and alter its decree relative to the amount of such alimony and the payment thereof, and may make any decree relative thereto which it might have made in the original suit."

Finally, we now consider the reliance placed on *Castellucci v. Castellucci, supra,* by the Family Court justice. Our holding in *Castellucci* does not conflict with our holding today. The problem that the court responded to in *Castellucci* is entirely distinguishable from the case before us. *Castellucci* began in the Family Court as a petition for a bed-and-board divorce.[3] While that petition was pending, the husband moved to Nevada, established domicile and obtained an ex parte divorce. Thereafter, the wife's petition was reached on the Family Court calendar and a decree, assented to by both parties, was entered recognizing the validity of the Nevada divorce and its divesting effect on the Family Court's jurisdiction to grant a now-unnecessary bed-and-board divorce. The decree also recited that the parties themselves had entered into a property-settlement agreement, and it set out the terms of that agreement. A subsequent disagreement regarding what bills the husband was required to pay brought the parties back into the Family Court and ultimately to this court. *Castellucci,* 116 R.I. at 102–03, 352 A.2d at 641.

This court held that the Family Court lacked subject-matter jurisdiction to order the husband to make payments under the property-settlement agreement. The court reasoned that jurisdiction was not conferred by the bed-and-board-divorce statute since the petition had been dismissed or by the Reciprocal Enforcement of Support Act since the proceedings were not instituted pursuant to it or by the inherent power of the court since the Family Court is of statutory creation and has no inherent general jurisdictional powers.

There exist two critical differences between *Castellucci* and the instant case. First, petitioner here received the separate-maintenance award prior to the ex parte divorce whereas in *Castellucci* the petition for the bed-and-board divorce was not reached for hearing until after the ex parte divorce was obtained in Nevada and Mrs. Castellucci stipulated to the validity of that decree. Therefore, in *Castellucci,* the ex parte divorce rendered the bed-and-board divorce petition unnecessary. Here, personal jurisdiction over the parties was validly in the Family Court initially and was retained even after the ex parte divorce decree since that decree had no effect on the question of support. *See* § 15–5–16, *infra. Rymanowski v. Rymanowski, supra.* A petition for a bed-and-board divorce is rendered unnecessary by an ex parte divorce since that petition seeks a decree affecting the marital status as well as a separate maintenance. An order under § 15–5–19 for relief without the commencement of divorce proceedings, however, does not affect the marital status as such.

The second critical difference is that in *Castellucci,* the parties themselves entered into a property-settlement agreement that determined the questions of support and property rights. The petitioner in *Castellucci* sought to use the Family Court to adjudicate an alleged breach of the settlement agreement. Her claim was one based on a breach of contract, and the proper forum would have been the Superior Court.

---

**3.** A bed-and-board divorce is derived from G.L. 1956 (1969 Reenactment) § 15–5–9, entitled "Divorce from bed and board," and provides, in part, as follows:

"Divorces from bed, board and future cohabitation, until the parties be reconciled, may be granted for any of the causes for which by law a divorce from the bond of marriage may be decreed, and for such other causes as may seem to require the same * * *."

In this case, no settlement agreement has ever been entered into by the parties. What did exist between them was an order for a separate maintenance entered by the court. The order remains in full force and effect until such time as the Family Court, after a proper hearing or on a stipulation by the parties, changes that order.

For the reasons stated, the petitioner's appeal is sustained, the order terminating the separate maintenance is vacated, and the papers of the case are remanded to the Family Court for further proceedings consistent with this opinion.