MARY S. TURNER *vs.* ALBERT M. TURNER.

Berkshire.     September 9, 1919. — November 10, 1919.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Husband and Wife*, Separate maintenance. *Domicil. Probate Court*, Jurisdiction, Appeal. *Equity Pleading and Practice*, Appeal.

Misconduct of a husband, not amounting to such cruel and abusive treatment as, under R. L. c. 152, § 1, is required to entitle a wife to maintain a libel for divorce, might justify her in living apart from him and enable her to maintain a petition for separate maintenance under R. L. c. 153, § 33.

Acts of a husband not amounting to physical violence, committed for the purpose of causing his wife to separate from him and inspired by the motive of alienating her affections and severing the marriage tie in order that he might live with another woman and from which pain and sorrow to the wife would be expected to ensue, may be found to justify a wife in living separate and apart from her husband and to entitle her to separate maintenance under R. L. c. 153, § 33.

Upon a petition under R. L. c. 153, § 33, by a wife, who was living apart from her husband, for separate maintenance, it appeared that the petitioner and the respondent were married in 1894; that in 1912 the respondent, after visiting a woman to whom he formerly had been engaged to be married, stated to his wife that that woman was "his ideal," and "that he wished to try the experiment of living with her;" that the petitioner was unnerved by such talk and that thereafter her health was not good; that shortly thereafter she found in the respondent's desk copies of letters he had written to the other woman, which, while they contained nothing showing criminal conduct or infidelity on the part of the respondent, were of a character to cause the petitioner further nervousness and impairment of health; that in 1916, during an absence of the respondent from the petitioner, she found in his desk, placed there by him with the purpose that she should see them and that her affections should be alienated thereby, two pictures made by him, one a water color and one a pencil sketch, representing the nude figure of the woman to whom he formerly had been engaged, so drawn as to leave nothing to the imagination. The foregoing conduct and acts of neglect by the respondent indicated an intention on his part to influence her to separate from him. No physical violence was inflicted upon the petitioner. Thereafter the respondent changed his residence to another State, whither the petitioner refused to accompany him. *Held*, that findings were warranted that the petitioner was living apart from the respondent for justifiable cause and that the petition might be maintained.

In the case above described, it *was said* that it was not necessary to decide whether the facts would justify the granting of a divorce on the ground of cruel and abusive treatment.

If, while a husband and his wife were domiciled in this Commonwealth, the husband is guilty of conduct toward the wife of such a character as warrants her in living apart from him and he thereafter removes his domicil to another

State whither for justifiable cause she refuses to follow him, her domicil remains in this Commonwealth and she may maintain here a petition for separate maintenance under R. L. c. 153, § 33.

The respondent in a petition for separate maintenance under R. L. c. 153, § 33, appealed to the Superior Court from a decree in favor of the petitioner. In the Superior Court the case by agreement was heard by a referee. Upon a *motion* that the report of the referee be confirmed, a decree was entered in the Superior Court "that the respondent's appeal from the decree of the Probate Court be dismissed, that said decree be and the same is hereby affirmed, and that the case be remanded to the Probate Court for further proceedings." Upon an appeal by the respondent from such decree, it being determined in substance that rulings of the referee that the petitioner was entitled to maintain her petition were justified, it was *held,* that the decree of the Superior Court should be modified so that by it the referee's report should be confirmed, the decree of the Probate Court affirmed, and the case remanded to the Probate Court for further proceedings.

APPEAL to the Superior Court from a decree of the Probate Court for the county of Berkshire granting a petition under R. L. c. 153, § 33, for separate maintenance.

In the Superior Court by agreement of the parties the petition was referred to a referee to hear the parties and their evidence and to report to the court his findings of fact together with such questions of law as either party might request, the referee's findings of fact to be final.

Besides the facts described in the opinion, the referee also found that the respondent was justified in his decision to remove from Sheffield, Massachusetts, to Northfield, Connecticut, in May, 1916, and that he then wrote to the petitioner offering her a suitable home and support with him there. Other material findings of the referee are described in the opinion.

After the filing of the report of the referee, the petitioner moved that it be confirmed. The motion was heard by *N. P. Brown, J.,* by whose order a decree was entered "that the respondent's appeal from the decree of the Probate Court be dismissed, that said decree be and the same is hereby affirmed, and that the case be remanded to the Probate Court for further proceedings." The respondent appealed.

*H. C. Joyner,* (*J. C. Roraback* with him,) for the respondent.

*M. B. Warner,* for the petitioner.

CARROLL, J. This is a petition for separate support under R. L. c. 153, § 33, alleging "cruel and abusive treatment," that the respondent has deserted the petitioner and refused to support

her. In the Probate Court it was decided that the allegations
of the petitioner were true, that she was living apart from her hus-
band for justifiable cause; he was ordered to pay her $50 forth-
with, and the sum of $40 each month until the further order
of the court. The respondent appealed. In the Superior Court
the case was sent to a referee to hear the parties and report his
findings, together with such questions of law as either party might
request, his findings of fact to be final.

The referee found that the petitioner and the respondent were
married in 1894 and in 1910 moved to Sheffield in this Common-
wealth; that in 1912 the respondent, after visiting a woman to
whom he had formerly been engaged, told his wife that this woman
was "his ideal" and "that he wished to try the experiment of
living with her;" that this conversation unnerved the petitioner
and from that time her health was not good; that shortly after-
wards the petitioner found in her husband's desk copies of letters
he had written to this woman (excerpts from which are printed in
a footnote *), and although it was found there was nothing incrim-

---

* "Because I do not yet know you by the new name or by any name and
until I do you shall be for me the ideal I lost so long ago and which I think
you realize my present need for. If I am not much mistaken an ideal is as
necessary for you as it is to me, and while I may be as far as ever from becom-
ing that ideal I can at least aim that way. I am sure also that you have not
yet met your ideal and very likely you have in a measure given up the hope
of doing so. If I can inspire you with that hope as you have so quickly
inspired me, we shall not have met again in vain. Or we shall not have met
again in vain or only for the passing of a few pleasant hours, the memory of
which I have both left with you and carry away.

"I am sure of this only, that we speak a common language, that you plainly
show me a feeling of kindness, of sympathy, and a desire to help me, and I
do not believe you were actuated by any other motive. For the present this
is enough and the consequences may take care of themselves. The admission
that I had spent four or five days under your roof being the powder train and
her questions the lighted match. I spared her all I could but admitted
nothing necessary to make the matter plain. We have had a continuous
session since Sunday morning and she has passed through the worst stages.

"It has caused her a severe struggle which has not hurt her in the least
though she does not realize it naturally. Be a man, Yīa, and help me to teach
her this lesson that I believe you and I have both learned — to be charitable
to the faults of others, to see the good in them, and make the most of it. It
is not for you to feel the slightest reproach for any of this whatever happens.

inating in the letters and no evidence of infidelity, the discovery of them caused the wife to become more nervous and severely impaired her health.

In May, 1916, Turner went to Northfield, Connecticut. About this time Mrs. Turner found among his effects two pictures, — one a water color and the other a pencil sketch, — made by him, representing the nude figure of the woman to whom he had been engaged; and so drawn, the referee finds, that nothing is left to the imagination. These pictures were placed where Mrs. Turner was almost certain to see them. This was done to alienate her affections and interest and was a part of a scheme to bring about a separation which he was willing should take place. While the charge of desertion was not supported, it was found that the husband's failure to write his wife after his removal to Northfield, to provide for her support, or to call on her when he visited Sheffield, "together with all the facts of this case," indicated an intention to influence her to separate from him. The referee makes no specific finding of cruel and abusive treatment, but he does find the petitioner is living apart from her husband for justifiable cause. There is no finding that the wife condoned the husband's conduct, but in view of the fact that it was found she was living apart from him for justifiable cause, we must infer that she did not.

We are not called upon to decide whether the words and acts of the husband were sufficient to sustain a libel for divorce for cruel and abusive treatment. See, in this connection, *Armstrong* v. *Armstrong*, 229 Mass. 592. Misconduct of the husband, not amounting to cruel and abusive treatment which would entitle the wife to a divorce, might justify her in living apart from him and requiring him to contribute to her support. *Lyster* v. *Lyster*, 111 Mass. 327. *Watts* v. *Watts*, 160 Mass. 464, 467, 468.

While no physical violence was inflicted on the petitioner and the respondent did not exhibit to her the pictures or the copies of the letters, after he had informed her of his affection for this woman and his desire to live with her, he placed the letters and

"I am enclosing a couple of addressed envelopes, but as matters now stand you need not consider them necessary because the bit is in my teeth and I am in that absolutely reckless and abandoned condition that caused John Tracy to drink coffee strong at night whether my heart goes or not. This is an acid test for May, for you and for me."

pictures where his wife would find them. He did this knowing she was in poor health and understanding her nervous condition; and he did it for the purpose of still further alienating her affections in order to bring about the separation he desired. As was said in *Coe* v. *Hill*, 201 Mass. 15, at page 21, "marriage is a civil institution, or status, in which, because the foundations of the family and the domestic relations rest upon it, the Commonwealth has a deep interest to see that its integrity is not put in jeopardy, but maintained." A separation is not to be decreed unless there is a substantial reason therefor, namely, where a marital wrong has been committed; and the disappointments of matrimony are not to be made an excuse for husband and wife living apart. But when it is the purpose of the husband to bring about a separation from his wife, and his acts are inspired by the malicious motive of alienating her affections and severing the marriage tie in order that he may live with another woman, and it is to be expected that pain and sorrow will ensue, such misconduct directed toward the wife and with such an end in view, may be found to justify her in living separate and apart from her husband. The pictures were not placed among his effects, and the other acts were not committed, merely to gratify his own lascivious desires; they were intended to injure his wife. The referee has found that all these acts were directed by Turner toward his wife; and that their purpose was to alienate her interest, destroy her affection, and force her to separate from him. This was such a malicious motive that, if shown, justifiable cause for separation could be found. We discover no error of law in the referee's rulings.

The petition is dated November 8, 1916. The respondent contends that the domicil of the parties was in the State of Connecticut on that date. The referee finds that the respondent went to Northfield, Connecticut, in May, 1916, but voted in Sheffield November 7, 1916. Even if the respondent's domicil were in Connecticut, the conversation and acts relied on to justify the wife in living apart from her husband occurred while he was domiciled in this Commonwealth. Under such circumstances the domicil of the wife does not follow that of the husband, and the Probate Court had jurisdiction of the case. *Shaw* v. *Shaw*, 98 Mass. 158. *Blackinton* v. *Blackinton*, 141 Mass. 432. *Perkins* v. *Perkins*, 225 Mass. 82, 85.

The decree of the Superior Court recited that the case came on to be heard upon the petitioner's motion to confirm the referee's report; that the appeal from the decree of the Probate Court should be dismissed and said decree affirmed. The decree should be modified by confirming the referee's report and by striking out the words "the respondent's appeal from the decree of the Probate Court be dismissed;" and so modified, it is affirmed.

*So ordered.*