ANNE W. MEYER *vs.* OSWALD FREDERICK MEYER.

Norfolk.   December 5, 1956. — January 14, 1957.

Present: WILKINS, C.J., RONAN, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Husband and Wife,* Separate support.   *Probate Court,* Decree, Costs.

Revocation of a decree of a Probate Court for separate support of a wife
    based on a finding of desertion by the husband as specified by her and
    a finding that she was living apart from him for justifiable cause, which
    was warranted by offensive communications by him to her repudiating
    their marriage and demanding its termination, was not required by
    the mere fact that after such decree she had brought a proceeding for
    divorce against him on the ground of adultery.   [295–297]
A decree of a Probate Court in a separate support proceeding directing
    the husband to make periodic payments to the wife in a stated sum
    "income tax free" was intended to provide her with that sum net
    after income taxes and cast on him the burden of taxes which might
    be assessed to her on such payments;  and in a subsequent contempt
    proceeding against him she was entitled to a decree ordering him to
    pay her the amount of certain taxes already assessed to her on the
    periodic payments made by him.   [298–300]
In a proceeding by a wife for separate support wherein a decree for
    periodic payments by the husband to her in a certain amount had
    been entered intended to provide her with that amount net after
    income taxes assessed to her on such payments and to cast the burden
    of such taxes on him, there was no merit in an appeal by him from a
    later decree, entered on her petition, which, although increasing the
    periodic amount to be paid by him, required her to pay the income
    taxes assessed to her on the payments and in effect did not increase
    the net amount to be enjoyed by her or the aggregate burden on him.
    [300–301]
There was no error in a decree of a Probate Court, entered in connection
    with proceedings relating to separate support of a wife resident in
    England by a husband resident in Massachusetts, awarding the wife
    counsel fees, the amount of her travel expenses from England to
    Massachusetts to attend hearings here and return, and an allowance
    for the services of an expert on certain English law involved in the
    case.   [301]

PETITION for separate support, filed in the Probate Court
for the county of Norfolk on December 8, 1944.

Following a decree for separate support on September 7,
1949, there were further proceedings and decrees by *Reyn-*

*olds*, J., on March 12, 1956, from which the respondent appealed.

*James C. Roy*, for the respondent.

*Thomas J. Carens*, for the petitioner.

CUTTER, J. The parties to this proceeding are husband and wife. The wife, then a resident of the United Kingdom, on December 8, 1944, filed a petition for separate support in the Probate Court against the husband, then and now a resident of Brookline. She alleged that the husband "has deserted her; and that she is living apart from her . . . husband for justifiable cause" and specified "that the respondent [the husband] has deserted" her. A decree entered on September 7, 1949, (1) recited that the husband had deserted the wife, and that she was living apart from the husband for justifiable cause, and (2) ordered the husband to pay "£25 sterling, income tax free," each week to the wife, except when she was in the United States when the weekly payment was to be $100, "income tax free."

The evidence at the hearing leading to the 1949 separate support decree indicated that the couple had then been married about twenty-five years and had four children of full age and one minor child. One child had died. The record shows no indication of real marital trouble until 1942, when the husband came to the United States on a six weeks war time temporary exit permit. A few weeks after the husband's arrival in the United States, the wife received letter and cable communications from him demanding a divorce in peremptory terms. He stated, with no apparent indication of shame, that he wished to marry a woman he had met here, "the one woman in the world whom I love and adore," and that his decision was irrevocable, despite the "pain and sadness" and hurt to his wife's pride which he would cause. He reported also that he had spent two nights in a New York hotel with a woman, whose first name alone was known to him. He enclosed the receipted hotel bill made out to "Mr. and Mrs. Oswald F. Meyer, Weybridge, England," suggesting to his wife "you will no doubt need it in your action against me for divorce." A later letter told

his wife that if she ignored his request for a divorce, he would "be forced to cut" her "allowance to a sensible amount."

The case is now here on appeals by the husband from four decrees entered March 12, 1956, as follows: (1) a decree holding the husband in contempt (on a petition filed by the wife in 1955) of the 1949 separate support decree and ordering him to pay the wife £1271 10s. to meet British income taxes due from the wife on the payments to her under the 1949 decree plus interest and charges on these taxes; (2) a decree granting in part a 1955 petition of the wife for modification of the 1949 decree; (3) a decree denying a petition filed in 1955 by the husband seeking revocation of the 1949 decree; and (4) a decree allowing counsel fees and expenses to the wife in connection with the 1955 petitions just mentioned. The probate judge filed three reports of the material facts, one dealing with the petitions for contempt and modification of the 1949 decree, and one on each of the other two petitions. The evidence is reported.

1. *The petition of the husband for revocation of the 1949 decree.* The husband sought revocation of the 1949 decree on the ground that the wife in 1952 had brought proceedings (still pending) in New York for an absolute divorce on the ground of adultery, in which the husband did not submit to the jurisdiction of the New York court. His contention is that the sole ground of the 1949 decree was desertion and that the initiation of the New York divorce proceedings was conclusive proof of consent to that desertion, requiring dismissal of the separate support proceedings under the doctrine of *Najjar* v. *Najjar*, 227 Mass. 450.

Authority to grant orders for support exists under G. L. (Ter. Ed.) c. 209, § 32, as amended by St. 1938, c. 136.[1]

---

[1] The pertinent language of § 32 reads as follows: "If a husband fails, without justifiable cause, to provide suitable support for his wife, or deserts her, or if the wife, for justifiable cause, is actually living apart from her husband, . . . the probate court may, upon his or her petition, . . . prohibit the husband or wife from imposing any restraint on the personal liberty of the other . . .; and, upon the application of the . . . wife . . ., the court may make further orders relative to the support of the wife . . . and may, from time to time, upon a similar application, revise and alter such order or make a new order or decree, as the circumstances of the parents . . . may require."

Under this section, if the husband has deserted the wife or if she is living apart from him for justifiable cause, an order for support may be made. Grounds which might not support a libel for divorce (see, for example, *Turgeon* v. *Turgeon*, 329 Mass. 364, 366, and cases cited) may support a petition for separate support which is designed to secure the temporary and continuing support of the wife rather than to create a judicial separation or a permanent status for the future. See *Slavinsky* v. *Slavinsky*, 287 Mass. 28, 31; *Dunnington* v. *Dunnington*, 324 Mass. 610, 611–612; *Welker* v. *Welker*, 325 Mass. 738, 741–742; *Jelly* v. *Jelly*, 327 Mass. 706, 709; *DeMarzo* v. *Vena*, 330 Mass. 118, 123. Separate support will be granted where a wife has been deserted and continues to live apart from her husband for justifiable cause, even where, because of improper conduct by her husband in connection with or subsequent to the desertion, she reasonably comes to the conclusion that she no longer is willing to live with him, even if he wants her to do so. *Tuttle* v. *Tuttle*, 240 Mass. 417. *Fleming* v. *Fleming*, 293 Mass. 147, 148–149. Compare the somewhat analogous situation discussed in *Slavinsky* v. *Slavinsky*, 287 Mass. 28, 33.

*Najjar* v. *Najjar*, 227 Mass. 450, relied on by the husband, holds that a libel for divorce on the ground of cruel and abusive treatment, brought by a wife within three years following her husband's desertion of her, was conclusive proof that thereafter the continuance of the desertion was with her consent, thus preventing divorce on the ground of desertion. See also *Craskin* v. *Craskin*, 288 Mass. 56; *Rubinstein* v. *Rubinstein*, 319 Mass. 568, 575–576. These cases, dealing with divorce, do not control (as the *Fleming* and *Tuttle* cases, *supra*, indicate) a proceeding under G. L. (Ter. Ed.) c. 209, § 32, for separate support to provide for the wife, while grounds for her living apart exist.

Although the desertion of the wife by the husband in 1942 was the basis specified in the wife's original petition for separate support, her proof in that proceeding of "written communications of a threatening and cruel nature" and of a character repudiating the marriage and seeking its termi-

nation (see *Turner* v. *Turner*, 234 Mass. 37, 40–41; *Bradford* v. *Bradford*, 296 Mass. 187, 189–190) was ample, as the probate judge found, to warrant the finding, recited in the 1949 decree, that in 1949 the wife was living apart from the husband for justifiable cause. *Fleming* v. *Fleming*, 293 Mass. 147. See *Brown* v. *Brown*, 323 Mass. 332, 334.

There is nothing in this record to show that since 1949 the husband (any more than the husband in *Tuttle* v. *Tuttle*, 240 Mass. 417) has removed any of the serious causes (including and in addition to the desertion) which his offensive conduct toward his wife originally gave her for living apart from him. See *Slavinsky* v. *Slavinsky*, 287 Mass. 28, 33. Even if the filing of the 1952 libel in New York is viewed as definite indication by the wife that she does not wish to return to the husband, it is no basis for revocation of a separate support order originally based on strong evidence of desertion, then greatly aggravated by the cruel conduct, already described, which in itself would have justified the wife in living apart from her husband.

2. *The wife's petition for modification and her contempt petition.* As already stated, the 1949 decree directed the husband to pay to the wife certain sums "income tax free." The sums themselves were paid by the husband but no amount for either United States or British income tax was paid to the wife. The wife was assessed for each of the British tax years 1951 to 1955, inclusive, aggregate United Kingdom income taxes on the sums paid to her by her husband amounting to £1271 10s. (after adjustments which it is not necessary to describe). The evidence warranted the probate judge in finding that this amount was definitely payable to the British tax authorities.

There was also evidence warranting findings that the husband's own expenditures still run at about the same level as in 1949; that his income before taxes has declined; that two Massachusetts corporations, in which he is interested, have in recent years been doing somewhat less well than in 1949; that one of these corporations sustained a serious loss in 1951; that in 1952 the husband irrevocably transferred

his shares in two foreign companies to trustees in trust for his issue so that such property would be out of the reach of his wife and for other reasons; that the husband had set up a revocable trust of his shares in the two Massachusetts corporations mentioned above, for the benefit of himself for life and thereafter for his children; that the husband has incurred substantial medical expense in recent years and now must live carefully because of certain serious physical conditions; that as of April 30, 1955, one of his corporations had an earned surplus of $83,860; and that the husband has to "dip into capital and savings" to keep up with his obligations. The probate judge, however, states that he has "no substantive evidence as to the extent of his 'capital and savings.' "

The principal purpose[2] of the wife's petition for modification was to make more specific the obligation of the husband with respect to her British income taxes. In her contempt petition, the wife requested the payment to her of some £3393 17s. 6d. (about $9,500). This she thought she needed to meet her British income taxes on the past payments under the 1949 decree. The payment requested was reduced (in the light of a subsequent British tax ruling) to £1271 10s., plus interest and charges already mentioned.

The decree upon the contempt petition ordered the husband to pay to the wife the amount of these taxes in arrears plus interest and charges. The decree on the petition for modification directed the husband to pay the wife, when in England, £37 each week free of banking charges, and to pay her $100 a week when she is in the United States. She is required by the modified decree to pay all income taxes assessed anywhere against her.

The obvious purpose of the 1949 decree was to give the wife the basic sums of £25 a week, when in England, and $100 a week, when in the United States, after payment of

---

[2] She also requested certain other relief to provide her, when in England, with payments in dollars. Since this relief in substance was not granted by the court, it need not be discussed.

all income taxes. In effect, it was an order for the payment by the husband to the wife of that amount which after applicable taxes would give her the stipulated sums.[3] We do not need to determine (and without a considerably expanded record[4] probably could not do so) what United States or British income taxes could rightly be assessed to the husband or to the wife with respect to those basic sums, inasmuch as the 1949 decree required the husband to pay all of them. See by way of analogy *Boyer* v. *Bowles,* 316 Mass. 90, 94–96. The probate judge in the decree[5] on the contempt petition, thus correctly construed the 1949 decree as directing that the husband bear the burden of British income tax on the basic sums.

The husband contends that he could not possibly make payments of £25 to the wife in England, which will be wholly income tax free. There was some evidence that this would be difficult, if not impossible, to achieve with precision.[6] If there was any administrative impossibility about the 1949 decree, the husband, obviously an experienced business man, should have appealed from it or seasonably sought

---

[3] There is nothing inherently indefinite or unreasonable about such an order, even if it requires resort to a formula computation based on applicable tax laws. See *Jasper* v. *Jasper,* 333 Mass. 223, 227. See analogy of *Century Cab, Inc.* v. *Commissioner of Insurance,* 327 Mass. 652, 664.

[4] The parties conceded in the Probate Court that at the time of the hearing no question of United States income taxes was then involved. The briefs and arguments did not purport to discuss in detail either United States or British tax questions.

[5] In form, the decree on the contempt petition does not purport to deal with more than the British taxes which have already been assessed. If further income taxes are assessed by any taxing authority with respect to (a) the payments made under the 1949 decree while it was in force, or (b) the payment ordered by the decree on the contempt petition, that decree will not bar a new petition.

[6] Under the Federal Internal Revenue Code and under the British Income Tax, where A pays taxable basic income to B and also pays B's income tax on that basic income, the payment of B's income tax will under some circumstances, at least, constitute taxable income to B. See, for example, *Old Colony Trust Co.* v. *Commissioner of Internal Revenue,* 279 U. S. 716, 729–731; Simon, Income Tax, vol. 1, §§ 245–249. This may present the difficult administrative problem whether, if reimbursement for the initial tax on the basic payment of income constitutes income to B, A's reimbursement to B of the further tax on the initial tax reimbursement will also constitute taxable income to B, and so on ad infinitum. See for recent Treasury discussion of this problem 1952–1 C. B. 8–9; 1952–2 C. B. 65–66.

its modification.[7] He, at this late date, should not be permitted in effect to reduce retroactively the support payments to his wife, required by the 1949 decree, by forcing her to bear a tax burden which he was intended to bear. If complete freedom from income taxes on the support payments (under the unamended 1949 decree) cannot be achieved, at least the husband should be required to achieve a reasonable approximation of what the 1949 decree required. The contempt decree will accomplish this to the extent that the tax situation has thus far developed (see note 5, *supra*).

We cannot see that the changes in the amounts payable to the wife, made by the decree on the wife's petition for modification, resulted in any increase in her net income after taxes. The modified decree for separate support orders the husband to pay her £37 instead of £25 per week. The evidence indicates that the increased payment, after British income taxes on the whole amount (which the wife must now pay under the modified decree), will leave the wife not over £25 per week and probably somewhat less than that. In view of the devaluation of the British pound since 1949, the general rise in living costs since 1949, the calculated efforts of the husband since 1949 to place his assets beyond the reach of the wife, and other factors mentioned in testimony, the judge would not have exceeded a sound discretion in increasing the weekly payments to the wife. As a matter of fact, the probate judge in effect reduced them, for hereafter when in the United States the wife will continue to receive $100 per week (as under the 1949 decree) but may have to pay income taxes upon that sum. See Internal Revenue Code of 1954, § 71 (a), U. S. C. (1952 ed.) Sup. III, Title 26, § 71 (a), 68A U. S. Sts. at Large, 19.[8] There cer-

---

[7] He seems to have been advised at all times by British counsel and accountants, as well as by Massachusetts counsel. His wife appears to have tried to keep him or his representatives advised of developments in the British tax situation.

[8] The wife has not appealed from the decree on her petition for modification so there is no occasion to consider whether the reduction in the amount available for her support, after taxes, when she is in the United States was warranted on this record.

tainly was no order for any net increase in the husband's payments, if reimbursement of income taxes be taken into account. After considering all the circumstances revealed by the evidence, we see no occasion for requiring any decrease (beyond any which may be involved in the decrees here under review) in the portion of the payments, which, after taxes, will be available to the wife for expenditure.

The provision of the decree on the petition for modification requiring the wife to pay "any and all income taxes assessed anywhere against her" plainly relates only to income taxes imposed with respect to periodic support payments of £37 or $100 per week due and payable after March 12, 1956, the date of the modified decree. This is not an appropriate case for revising the 1949 support decree retroactively so as to shift the burden of any income taxes (on support payments or on reimbursement of taxes on support payments) from the husband to the wife. Compare *Williamson* v. *Williamson*, 246 Mass. 270, 272–274; *Watts* v. *Watts*, 314 Mass. 129, 133–134.

3. *Decree on petition for counsel fees.* The decree of the Probate Court ordered the husband to pay into court on or before April 16, 1956, $1,266.50 for the wife's expenses in connection with the four petitions. Her counsel was awarded $400 as counsel fees and $53.50 for disbursements. This allowance seems somewhat modest in the light of the complications of this case. These petitions were clearly of sufficient importance to the wife to justify requiring the husband to pay her travel expenses ($513) from England to the United States and return, so that she could be present at the hearing on the petitions. The allowance of $300 for the services of an expert on British tax law was also warranted, for without his assistance the tax problems here involved would have been dealt with much less readily.

4. The costs and expenses of all four appeals will be allowed to the wife or her counsel in the discretion of the Probate Court. *Heath* v. *Heath*, 325 Mass. 126, 127.

*Decrees affirmed.*