ANN A. MADDEN & another *vs.* JAMES L. MADDEN & others, trustees, & another.

Barnstable. February 2, 1971. — April 21, 1971.

Present: TAURO, C.J., SPALDING, CUTTER, SPIEGEL, & BRAUCHER, JJ.

*Jurisdiction,* Nonresident, Divorce proceeding. *Judgment. Res Judicata. Contract,* Separation agreement. *Husband and Wife,* Separate support. *Divorce,* Jurisdiction, Foreign divorce. *Probate Court,* Jurisdiction. *Domicil. Constitutional Law,* Full faith and credit, Divorce.

In a proceeding under G. L. c. 209, § 32, for separate support by a wife having a domicil in Massachusetts where minor children of the parties also resided, a decree overruling a special plea to the jurisdiction by her husband, who was not served with process and only entered a special appearance, and a later decree declaring that the wife was living apart for justifiable cause and ordering support payments by her husband were fully binding on him in the absence of an appeal from either decree, and he was barred from attacking the later decree in a subsequent proceeding in equity by his wife seeking its modification and enforcement. [361–362]

A separation agreement entered into by a husband and wife through trustees, containing covenants by the wife with the trustees that she would not seek any support payments for herself or her and her husband's minor children beyond the payments stipulated in the agreement, and that the agreement might be pleaded in bar to any petition therefor, was not a bar to a subsequent proceeding by her under G. L. c. 209, § 32. [362–363]

Where it appeared that a husband and wife entered into a separation agreement providing for payments by him for her support and the support and education of the minor children of the parties, to be paid "not later than the fifth of each month" and to be "tax free," and stating that if he failed to make such payments he would authorize the trustee under a trust established for his benefit by his father to make such payments directly to the wife, that subsequently an unappealed decree was entered in a proceeding under G. L. c. 209, § 32, by her which ordered support payments "in accordance with . . . [the separation] agreement" that thereafter the husband failed to perform his obligations thereunder, that the wife then brought a second proceeding, to modify and enforce the unappealed decree, and that the decree therein ordered funds of the trust established by the father to be applied to the satisfaction of the support obligations, this court, upon appeal by the husband, who contended that the second proceeding

was not "cognizable" in equity, treated it as one under c. 209, §§ 32, 33, and c. 208, §§ 12, 13, and affirmed the decree therein. [363–365]

A finding by a judge of a Probate Court in Massachusetts that a husband "did not have a bona fide residence in the State of Georgia" for the six month period preceding the filing of a petition by him for divorce there as required for a valid divorce by Georgia law was justified where it appeared that shortly before such period began he went one morning from Massachusetts to Georgia with a view to divorce and marriage to a woman other than his wife and rented an apartment and made other arrangements there and returned to Massachusetts that evening, that thereafter he spent some time in Georgia and some time in Massachusetts, that checks for him were deposited in a bank here, that he filed joint tax returns showing an address for him here, and that on the day of a Georgia decree of divorce he returned from there to Massachusetts and stayed here for a week before returning there and marrying the other woman. [365–367]

A decree of divorce obtained in Georgia by a husband whose alleged domicil there was not bona fide and whose petition therefor intentionally did not list the minor children of the parties in violation of Georgia law and in order to deceive the Georgia court, or mention a pending petition in Massachusetts for separate support by his wife, who did not appear in the Georgia proceeding, was not entitled to full faith and credit under art. 4, § 1, of the United States Constitution and the governing Federal statute, and was not a bar to a proceeding in equity in a Probate Court here by his wife to modify and enforce an unappealed decree in the separate support proceeding. [367]

In a proceeding in equity in a Probate Court by a wife and her trustee under a separation agreement entered into by her and her husband through trustees to modify and enforce an unappealed decree under G. L. c. 209, § 32, ordering support payments by her husband in accordance with the agreement, where it appeared that the trustee representing the husband had died, that the agreement provided that the husband was to "have the sole power to choose . . . [the decedent's] successor," and that the husband was not served with process here and only entered a special appearance to contest the jurisdiction of the court, it was held that there was error in a provision of a decree directing the husband "to appoint forthwith" a trustee in place of the decedent and ordering that the appointee be "made a party hereto." [367–368]

PETITION IN EQUITY filed in the Probate Court for the county of Barnstable on April 23, 1968.

The case was heard by *Knight*, J.

*William G. McRae*, of Georgia, for William C. Madden.

*Daniel J. Fern* for Ann A. Madden.

BRAUCHER, J. William C. Madden (William) appeals from a decree on a petition in equity brought by Ann A. Madden (Ann) and a trustee for her under a separation agreement

dated February 1, 1955. The petition sought modification
and enforcement of a previous decree dated August 1, 1967,
awarding Ann, as William's wife, separate support for her-
self and their three minor children. The other respondents
are trustees under two trusts administered in Massachu-
setts, one established by William's father in 1923 (the
M. L. Madden trust), and one established under the will of
his mother by a codicil executed in 1942 (the Grace E.
Madden trust). William's income as life beneficiary of the
two trusts is about $52,000 a year, and the petition sought
to hold his property in the trusts to respond to and be
applied to the satisfaction of the decree to be rendered.
William was not served with process, but appeared specially
to contest the jurisdiction of the court and to protect his
property interest in the trusts. The judge made a report
of material facts, and the evidence is reported.

William and Ann were married in Massachusetts in 1949
and thereafter lived in Massachusetts. One child was born
to them in 1950 and another in 1951. They separated in
October, 1954, and entered into a separation agreement
dated February 1, 1955. The separation agreement, made
between Ann and William and their trustees, provided that
Ann might live apart from William and gave custody of the
two children to Ann; William promised to provide, tax
free, $400 a month for her support and $150 a month for
the support of each child, plus certain medical and edu-
cational expenses, and agreed that if without legal justifica-
tion he failed to make payments by the fifth of each month
he would give the trustees under his parents' trusts written
authorization to make the payments directly to Ann.

In May, 1957, there was a conditional reconciliation; the
parties lived together until December, 1957, and a third
child was born to them in February, 1958. For almost six
years after the last separation in December, 1957, the
trustees of the M. L. Madden trust made the monthly pay-
ments provided in the separation agreement. In August,
1963, William and Ann orally agreed to modify the separa-
tion agreement to provide for the support of the third

child, and the aggregate monthly payment was increased to $1,000. Monthly payments of $1,000 were made by the trustees until March 29, 1968.

In the fall of 1966, William was living in an apartment in Natick, Massachusetts. He told a Boston attorney that he wanted a divorce from Ann in order to marry a Mrs. Z. On November 25, 1966, he and the attorney flew to Atlanta, Georgia, to establish William's residence there as a basis for divorce. They met a Georgia attorney, rented a furnished apartment on the premises of the Georgia attorney for roughly $10 a week, opened a checking account in an Atlanta bank, arranged for telephone service, and flew back to Boston that evening. Since then William has spent some time in Atlanta and some time in Massachusetts. His checks from the trusts were deposited in a Natick bank until March, 1967, and in March William and Ann filed joint State and Federal tax returns for 1966, showing a Massachusetts address for William.

On May 3, 1967, Ann filed a petition against William for living apart for justifiable cause under G. L. c. 209, § 32. The petition alleged that William had moved to Georgia on or about December 1, 1966, and that he intended to seek a Georgia divorce in violation of the separation agreement. William was served by publication; a copy of the citation sent to him at an Atlanta address was returned undelivered. On June 9, 1967, he entered a special appearance; he made a special plea to the jurisdiction, which was overruled.

On July 2, 1967, William filed a petition for divorce in Georgia on the ground of desertion, alleging as required by Georgia law that he had been a bona fide resident of Georgia for six months. The petition failed to list the three minor children of the parties as required by Georgia law, and failed to mention Ann's petition filed May 3, 1967. Ann was served by publication and by mail, but did not appear in the Georgia suit. On July 28, 1967, Mrs. Z purchased a home in Barnstable County, Massachusetts, and William stayed there for a few days in July.

On August 1, 1967, after hearing, a decree was entered on

Ann's petition. The decree determined that she was living apart from William for justifiable cause, awarded her custody of the three minor children, and made provisions "in accordance with a written agreement between the parties dated February 1, 1955, as amended," that he pay her $500 a month for her support and $166.67 a month for each of the three children, plus their educational expenses. No appeal was taken from that decree. ᵕ

On September 8, 1967, a decree of divorce was granted to William in Georgia. He returned to Massachusetts and stayed here from September 8 to September 15, 1967. On September 15, he and Mrs. Z went to Georgia and were married there.

In April, 1968, Ann filed her present petition. A plea to jurisdiction and motion to dissolve a temporary restraining order and to dismiss the petition were denied in June, 1968. After hearing, a final decree was entered April 22, 1969. The judge found that William did not have a bona fide residence in Georgia for the required period, and that his failure to list the names of the children in his divorce petition was intentional and for the purpose of deceiving the Georgia court, and decreed that the Georgia divorce decree was not entitled to be accorded full faith and credit or to be recognized in this Commonwealth. The decree also directed William to appoint a successor trustee under the separation agreement, held the M. L. Madden trust to respond to and be applied to the satisfaction of the payments for the support of Ann and the three children, modified the decree of August 1, 1967, accordingly, and provided that the Grace E. Madden trust may not be held to respond to and be applied to the satisfaction of the support payments.

William now claims (1) that the decree of August 1, 1967, requiring him to pay Ann certain sums of money, was void because he was a nonresident who was not served with process and did not appear generally; (2) that the separation agreement was a bar to the present suit; (3) that the petition in the present suit fails to allege a basis for relief cognizable in equity, that there was an adequate remedy at

law, and that there was no proof that any debt was owed when the petition was filed; (4) that the judge erred in failing to give full faith and credit to the Georgia divorce decree; and (5) that it was error to enter a decree against him personally, directing him to appoint a successor trustee under the separation agreement.

1. *The decree of August 1, 1967.* Ann's 1967 petition was filed under G. L. c. 209, § 32. "It is plain that the court had jurisdiction over the petition, at least so far as concerned custody of the minor children and direction for their personal treatment. . . . The court doubtless had jurisdiction, also, over the relation of the petitioner to the status of her marriage with the respondent so far as necessary to protect her as a resident of this Commonwealth." *Schmidt* v. *Schmidt,* 280 Mass. 216, 218–219. But it is contended that "a valid personal judgment cannot be rendered against a nonresident defendant who is not served with process within a State and who does not appear" and that "the part of the decree operating as a personal judgment against the respondent (that is ordering him to pay money to the petitioner . . .) was not warranted because the probate court had not acquired jurisdiction to that end over the respondent." *Id.* at 220–221. See *Mosher* v. *Mosher,* 293 Mass. 105, 106; *Wiley* v. *Wiley,* 328 Mass. 348, 351. But in the *Schmidt* case, *supra,* the nonresident husband appeared specially and filed a motion to dismiss the petition for want of jurisdiction. The motion was denied, the respondent appealed, and this court reversed.

"Every court confronted with a law suit of any kind is under both the necessity and the duty of determining whether or not it has jurisdiction to entertain the suit, and it necessarily has jurisdiction to make this determination. If it determines erroneously that it has jurisdiction, its own erroneous determination does not give it any true jurisdiction of the case as a whole, and its judgment is in general void and therefore subject to collateral attack, but in accordance with principles which also form the basis for the familiar doctrine of res judicata the judgment *may,* after it

becomes final, be binding upon the *parties* to the suit although not upon others, and the rights of *parties* may therefore be limited to appeal, writ of error, petition to vacate, or other methods of direct attack." *Old Colony Trust Co.* v. *Porter,* 324 Mass. 581, 586. See *Dennis* v. *Dennis,* 337 Mass. 1, 4. These principles are properly applicable to an objection to jurisdiction over the person. Restatement: Judgments, § 9, illustration 1, § 20, comment b. *Baldwin* v. *Iowa State Traveling Men's Assn.* 283 U. S. 522, 524–526. *American Sur. Co.* v. *Baldwin,* 287 U. S. 156, 166. *Treinies* v. *Sunshine Mining Co.* 308 U. S. 66, 78. *Durfee* v. *Duke,* 375 U. S. 106, 111–112. Compare *Stone Leather Co.* v. *Henry Boston & Sons, Ltd.* 234 Mass. 477, 478–479; *Harvey* v. *Fiduciary Trust Co.* 299 Mass. 457, 468–469; *Cohen* v. *Cohen,* 319 Mass. 31, 35–36.

In response to Ann's 1967 petition William entered a special appearance and made a special plea to the jurisdiction of the court over him. His special plea was overruled and he did not appeal. The court had jurisdiction to rule on the special plea, and its ruling that it had jurisdiction over him was binding on him unless set aside on appeal or other direct attack. It follows that he was fully bound by the decree of August 1, 1967, and cannot now attack it collaterally.

2. *The separation agreement as a bar.* William contends that the separation agreement of February 1, 1955, bars the present suit, citing *Bailey* v. *Dillon,* 186 Mass. 244, and *Schillander* v. *Schillander,* 307 Mass. 96. By the separation agreement Ann covenanted with the trustees under the agreement that, if the payments by her husband were duly made, she would not seek any further support for herself or her two children, and that the instrument might be pleaded in bar of any petition for that purpose. William also contends that the oral agreement of August, 1963, providing for the support of the third child born in 1958, was void because William and Ann were not competent to contract with each other, citing *Bucklin* v. *National Shawmut Bank,* 355 Mass. 338.

On William's theory, it may be that the enforcement of the separation agreement should be sought by his trustee under the separation agreement rather than by him. G. L. c. 209, §§ 2, 6, as they were before St. 1963, c. 765, §§ 1 and 2. *Proctor* v. *Lombard*, 233 Mass. 213, 216. *Blumenthal* v. *Blumenthal*, 303 Mass. 275, 277. *Taylor* v. *Gowetz*, 339 Mass. 294, 297 n. Moreover, the bar, if it exists, would seem to have been equally a bar to Ann's 1967 petition. The attempt to assert it now may be a collateral attack on the decree of August 1, 1967, in violation of the principles of res judicata.

But we need not resolve these difficulties, since the separation agreement does not bar a proceeding under G. L. c. 209, § 32. That section provides that "upon the application of the . . . wife . . . the court may make further orders relative to the support of the wife and the care, custody and maintenance of their minor children . . . and may, from time to time, upon a similar application, revise and alter such order or make a new order or decree, as the circumstances of the parents or the benefit of the children may require." As we said in *Wilson* v. *Caswell*, 272 Mass. 297, 302, with respect to the similar power concerning alimony in G. L. c. 208, § 37, "The parties, by this agreement, cannot deprive the court of this power. . . . Husband and wife cannot by contract deprive the Probate Court of jurisdiction to modify a decree of alimony; or of power to consider their relation in connection with their contract and all other facts material to the issues properly before it in providing for the maintenance of wife or minor children, although the exercise of its jurisdiction may change in some respects their situation as contemplated by the contract." Compare *Bradford* v. *Bradford*, 296 Mass. 187, 189; *Kates* v. *Kates*, 347 Mass. 783; *Buchanan* v. *Buchanan*, 353 Mass. 351, 352–353; *Smith* v. *Smith*, 358 Mass. 551, 553.

3. *Want of equity.* William treats Ann's present petition as an attempt to state a basis for relief "cognizable under the general principles of equity jurisprudence, arising between husband and wife," under G. L. c. 208, § 33, as in-

corporated by reference by G. L. c. 209, § 33. On this basis he contends that no such cause is shown, citing *Blumenthal* v. *Blumenthal*, 303 Mass. 275, 278, *Whitney* v. *Whitney*, 316 Mass. 367, 370, and *Prahl* v. *Prahl*, 335 Mass. 483, 485. This contention seems to treat the petition as an attempt by Ann to enforce the separation agreement, and to rest in part on the contention we have rejected, that the August 1, 1967, decree was void.

We treat the petition as seeking modification and enforcement of the August 1, 1967, decree pursuant to G. L. c. 209, §§ 32, 33, and G. L. c. 208, §§ 12, 13. *Williamson* v. *Williamson*, 246 Mass. 270, 272–274. *Watts* v. *Watts*, 314 Mass. 129, 133–134. *Meyer* v. *Meyer*, 335 Mass. 293, 297–301. *Wilson* v. *Wilson*, 349 Mass. 29, 30. In such a proceeding, an attachment may be made by injunction, as in suits in equity, to reach property which cannot be reached to be attached as in an action at law. G. L. c. 215, § 6A. See *Ryder* v. *Ryder*, 322 Mass. 645, 648–650. Compare *Snyder* v. *Smith*, 185 Mass. 58, 61–62; *Mosher* v. *Mosher*, 293 Mass. 105, 107; *Gulda* v. *Second Natl. Bank*, 323 Mass. 100, 104; *Katz* v. *Katz*, 330 Mass. 635, 639.

There was ample basis for such a proceeding on April 23, 1968, when the present petition was filed. After the support decree of August 1, 1967, William obtained the Georgia divorce decree and remarried. In February, 1968, William notified the trustees to stop providing educational support for the children. According to Ann's uncontradicted testimony, payments for February and March were not made, as the separation agreement provided, "not later than the fifth of each month." Nor were payments made "tax free," as required by the separation agreement. Compare *Meyer* v. *Meyer*, 335 Mass. 293, 297–301. Shortly after March 29, 1968, William instructed the trustees of the M. L. Madden trust to stop making payments to Ann, and in April, 1968, she paid her own income tax on his payments for the calendar year 1967. She was informed that he had refused to give the trustees the written authorization provided for in the separation agreement, and William

admits that he has not given such written authorization.

4. *Effect of the Georgia divorce decree.* William asserted that the Georgia divorce decree was a bar to the maintenance of the present suit, and claims error in the judge's refusal to give the Georgia decree full faith and credit. Separate support under G. L. c. 209, § 32, is dependent on the existence of the marriage relation, and termination of that relation by a valid divorce decree rendered in another State entitles the husband to a discharge from his liability for payments which had not become due at the time of the divorce. *Rosa* v. *Rosa,* 296 Mass. 271, 272. *Heard* v. *Heard,* 323 Mass. 357, 361. *Shain* v. *Shain,* 324 Mass. 603, 604, cert. den. 338 U. S. 954. *Chittick* v. *Chittick,* 332 Mass. 554, 555. *Ingersoll* v. *Ingersoll,* 348 Mass. 209, 210–211.

But the Georgia divorce decree has the effect of terminating liability for support only if it is valid. *Welker* v. *Welker,* 325 Mass. 738, 743. *Barnard* v. *Barnard,* 331 Mass. 455, 457. *Ragucci* v. *Ragucci,* 357 Mass. 235, 237–238. Georgia Code 1933, § 30–107, as amended by Ga. Laws (1958) No. 385, § 1, forbids the granting of a divorce to a person "who has not been a bona fide resident of the State six months before the filing of the application for divorce." William asserted in the trial court that the statute required "domicile" rather than "actual residence," citing *Williams* v. *Williams,* 191 Ga. 437. We assume that the judge accepted that assertion, and we accept it. William also conceded that the requirement was jurisdictional and that, since the divorce was based on constructive service on Ann without an appearance by her, the jurisdiction of the Georgia court could be challenged if he failed to meet the requirement. *Patterson* v. *Patterson,* 208 Ga. 7, 10–12 (Nevada divorce). *Garfi* v. *Garfi,* 327 Mass. 122, 123 (Nevada divorce). *Barnard* v. *Barnard,* 331 Mass. 455, 457 (Nevada divorce). *Adams* v. *Adams,* 338 Mass. 776, 781–782 (Illinois divorce). *Ingersoll* v. *Ingersoll,* 348 Mass. 209, 211 (Nevada divorce). *Rice* v. *Rice,* 336 U. S. 674.

The judge found that "William did not have a bona fide residence in the State of Georgia for the requisite period be-

fore he filed a petition for divorce." That finding is attacked on this appeal, and it is contrary to testimony given by William and to an allegation in Ann's petition of May 3, 1967. But the judge was not bound by William's testimony or by Ann's allegation in the prior suit. His finding is supported by his subsidiary findings and by substantial evidence, and we cannot say it is plainly wrong.

According to William's testimony, he first went to Atlanta late in November, 1966. This was the one day trip with his Boston attorney to visit his Georgia attorney with a view to divorce. He testified that he flew to Georgia again in December, returned to Boston later that month, drove to Atlanta late in December with Mrs. Z, and returned to Boston January 14–16 and January 25–29, 1967. On January 5, 1967, six months before he filed his petition for divorce, he was staying in a $10 a week apartment rented from his Georgia attorney; Mrs. Z was staying in the Marriott Hotel in Atlanta. When he returned to Boston January 25, he stayed at Mrs. Z's home in Wellesley. He gave a Massachusetts return address on a valentine sent to his daughter in February, paid rent on his Massachusetts apartment until some time in February or March, sold his Massachusetts furniture in the early spring, gave a Massachusetts address on income tax returns signed in March, deposited the checks from the trustees in a Massachusetts bank until March, and did not give a notice of change of address to his life insurance companies until 1968. In July, 1967, Mrs. Z bought a house in Massachusetts, and William stayed there for a few days. Neither William nor Mrs. Z owns any real estate in Georgia. Georgia Code 1933, § 30–105, as amended by Ga. Laws (1967) No. 504, § 1, requires that a divorce petition show "whether or not there are any minor children of the parties and the name and age of each minor child." William's divorce petition failed to list the three minor children of the parties, or to mention Ann's petition then pending in Massachusetts. The judge found that the failure to list the children was intentional and for the purpose of deceiving the Georgia court.

On these facts we think the finding was justified that William's alleged domicil in Georgia was not bona fide. The case thus comes within the principle of *Patterson* v. *Patterson,* 208 Ga. 7, 11–12: "It would be an imposition on the . . . [Georgia] court for . . . [William] to represent himself as being a bona fide resident of that State, and would amount to such fraud on his part as to render the decree entered therein void." Under the United States Constitution, art. 4, § 1, and the governing Federal statute, decrees rendered in another State are entitled only to "the same full faith and credit . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U. S. C. (1964) § 1738. See *Heard* v. *Heard,* 323 Mass. 357, 364. The Georgia decree here in issue is not entitled to faith and credit in Massachusetts.

5. *The appointment of a successor trustee.* Paragraph 2 of the decree provides that William "is directed to appoint forthwith a Trustee in place of Lothrop Withington deceased, under separation agreement of February 1, 1955, and said party so appointed is made a party hereto." William asserts that under the separation agreement, in the event of the death of trustee Withington, he was to "have the sole power to choose his successor," that this trust is not within the scope of the power of the courts to appoint trustees to fill vacancies under G. L. c. 203, §§ 5 et seq., and that the direction is a personal decree against William not warranted by his special appearance to defend his property. We agree that this paragraph of the decree, directing personal action by William, is erroneous in view of William's special appearance. *Schmidt* v. *Schmidt,* 280 Mass. 216, 217–218. *Mosher* v. *Mosher,* 293 Mass. 105, 106. *Wiley* v. *Wiley,* 328 Mass. 348, 349. Moreover, the appointment of a successor trustee is unnecessary. So far as Ann seeks enforcement of the separation agreement, her trustee is a party and has capacity to sue William and to seek an equitable attachment of William's property. A successor to William's trustee might be needed only if enforcement of the separation agreement against Ann were in question.

6. The decree appealed from is modified by striking out paragraph 2, and as so modified it is affirmed. Costs and expenses of appeal may be allowed to the appellee or her counsel in the discretion of the Probate Court.

*So ordered.*